[Cite as *State v. White*, 2012-Ohio-6136.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.  12 MA 47 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| MONIQUE R. WHITE, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the
                             Youngstown Municipal Court,
                             Case No. 11 CRB 2219.

JUDGMENT:                    Affirmed. Motion to Withdraw Granted.


APPEARANCES:
For Plaintiff-Appellee:       Attorney Dana Lantz
                             City Prosecutor
                             Attorney Kathleen Thompson
                             Assistant City Prosecutor
                             26 S. Phelps Street
                             Youngstown, OH  44503

For Defendant-Appellant:      Attorney Richard Hura
                             9 E. Park Avenue
                             Columbiana, OH  44408


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich


                             Dated:  December 17, 2012

DeGenaro, J.

{¶1} Defendant-Appellant, Monique R. White, appeals the March 8, 2012 judgment of the Youngstown Municipal Court convicting her of one count of interference with custody and sentencing her accordingly. Appointed appellate counsel filed a no-merit brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.E.2d 493 (1967) and *State v. Toney*, 23 Ohio App.2d 203, 262 N.E.2d 419 (7th Dist.1970), and requested leave to withdraw from the case. White failed to file a pro-se brief. A thorough review of the case file reveals that there are no appealable issues, and that the appeal is in fact frivolous. Accordingly, the judgment of the trial court is affirmed and counsel's motion to withdraw is granted.

### Facts and Procedural History

{¶2} On October 25, 2011, White was charged by complaint with one count of interference with custody (R.C. 2919.23(A)(1)), a first-degree misdemeanor. White was arrested on October 28, 2011 and released on a recognizance bond that same day. White was arraigned, pled not guilty and counsel was appointed.

{¶3} The case proceeded to a bench trial on January 18, 2012. The minor child at issue in this case, eleven-year-old C.M., testified that he was at his father Clarence Morgan's house for visitation on September 26, 2011, playing football in the front yard with some other children, when he was picked up in a vehicle by Kionna and Callie White, who were relations of his mother Yonetta White. C.M. stated it was only his intention to go with the women for a few minutes, but that one of them told him to go inside and get his school clothes for the next day, which he did. C.M. said he was first taken to Kionna's house and subsequently to Appellant Monique White's house (his maternal aunt), where he spent the night. He stated he did not call home, nor was he encouraged to do so. The next day, September 27, 2011, C.M. went to school and then rode the bus home to his father's house.

{¶4} C.M.'s mother Yonetta testified that she had legal custody of the boy, but that he had been staying at Clarence's house since the end of August because she was having behavioral problems with him. She stated she had not spoken to her sister, Appellant Monique White, for two to three years and that White did not have her permission to have custody or control over C.M. She testified she was contacted by

Clarence on the evening of September 26, 2011, who reported to her that C.M. was missing. After several rounds of phone calls to various relatives, C.M. could not be located and a report was made to police.

{¶5} Clarence testified that he never gave anyone permission to take C.M. from his property on September 26, 2011. He also testified he never gave White permission to have control or custody over C.M.

{¶6} Seventeen-year-old Kejuana Clay, who had a step-sister-like relationship with C.M. and was watching C.M. and her siblings after school on September 26, 2011, testified that C.M. was picked up by a vehicle by two adult females, who did not ask permission to take the boy. She said C.M. retrieved clothing from inside the house before leaving. Kejuana reported the incident to her mother, Pamela Clay, when she returned home from work shortly thereafter.

{¶7} The State also presented the testimony of the Youngstown Police Officer who investigated the case, Officer Michael Brindisi, who stated that his report did not indicate that C.M. had a history of running away.

{¶8} The defense presented the testimony of one witness, Kionna White. She testified that she saw C.M. on the street corner on September 26, 2011, and was concerned when she noticed C.M. had two black eyes. (C.M. had earlier testified that he received the black eyes from a fall.) According to Kionna, she only had her three-year-old daughter with her in the car at the time and offered to take C.M. back to her house. She claimed that C.M. never went back inside Clarence's house to get a change of clothing. Once back at her house, Kionna said she talked to Clarence briefly by phone. She said shortly thereafter, while she was in the restroom, C.M. left her home, and she did not know where he went. According to Kionna, White never came to her house to pick up C.M.

{¶9} After considering the evidence, the trial court found White guilty as charged. At a sentencing hearing on March 8, 2012, the trial court ordered White to serve one day in the county jail, 90 days of electronically-monitored house arrest (EMHA), with jail-time credit of one day, and 18 months of intensive probation supervision, and imposed a $250

fine, plus court costs and other fees. All financial sanctions were ordered to be paid within six months in six equal monthly payments, and White was also ordered to perform 60 hours of community service.

{¶10} On March 13, 2012, the trial court granted White's motion to stay the imposition of her sentence pending appeal. On June 5, 2012, appointed appellate counsel filed a no-merit brief. On June 18, 2012, this court granted White 30 days to file a pro-se brief raising any claims of her own.

{¶11} In a July 12, 2012 judgment entry, this court found that White, acting pro se, had filed a one-page letter listing three claims of error, which was not properly formatted as a brief under App.R. 16, was not supported with detailed information about her claims, failed to reference passages in the record to support her claims, and would therefore not be construed as a brief and would not be considered by this court. White was granted 30 days to file a brief that substantially complied with App.R 16, which she failed to do.

### *Anders* No-Merit Brief

{¶12} An attorney appointed to represent an indigent criminal defendant may seek permission to withdraw if the attorney can show that there is no merit to the appeal. *See generally Anders*, 386 U.S. 738. To support such a request, appellate counsel is required to undertake a conscientious examination of the case and accompany his or her request for withdrawal with a brief referring to anything in the record that might arguably support an appeal. *Toney*, 23 Ohio App.2d at 207. The reviewing court must then decide, after a full examination of the proceedings, whether the case is wholly frivolous. *Id.*

{¶13} In *Toney*, this Court established guidelines to be followed when counsel of record determines that an indigent's appeal is frivolous:

> 3. Where a court-appointed counsel, with long and extensive experience in criminal practice, concludes that the indigent's appeal is frivolous and that there is no assignment of error which could be arguably supported on appeal, he should so advise the appointing court by brief and request that he be permitted to withdraw as counsel of record.
>
> 4. Court-appointed counsel's conclusions and motion to withdraw as

counsel of record should be transmitted forthwith to the indigent, and the indigent should be granted time to raise any points that he chooses, pro se.

5. It is the duty of the Court of Appeals to fully examine the proceedings in the trial court, the brief of appointed counsel, the arguments pro se of the indigent, and then determine whether or not the appeal is wholly frivolous.

6. Where the Court of Appeals makes such an examination and concludes that the appeal is wholly frivolous, the motion of an indigent appellant for the appointment of new counsel for the purposes of appeal should be denied.

7. Where the Court of Appeals determines that an indigent's appeal is wholly frivolous, the motion of court-appointed counsel to withdraw as counsel of record should be allowed, and the judgment of the trial court should be affirmed." *Id.* at syllabus.

**{¶14}** In this case, White's appeal is wholly frivolous.

**{¶15}** First, White cannot argue that any errors occurred prior to her trial. The only pretrial motion she filed (aside from a motion to continue the pretrial, which was denied) was a motion for discovery. There is nothing in the record indicating she failed to receive the discovery as requested.

**{¶16}** White's speedy trial rights were not violated. R.C. 2945.71(B)(2) gives the trial court 90 days after the person's arrest or the service of summons to bring the person to trial for a first-degree misdemeanor. "We are not to count the day of arrest when computing the time within which a defendant must be brought to trial." *State v. McCall*, 152 Ohio App.3d 377, 2003-Ohio-1603, 787 N.E.2d 1241, ¶10 (7th Dist.), citing *State v. Lautenslager*, 112 Ohio App.3d 108, 110, 677 N.E.2d 1263 (3d Dist.1996); R.C. 2945.71; and Crim.R. 45(A). "For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). Further, the time for bringing the person to trial can be extended upon the person's own motion, R.C.

2945.72(H), though in this case there were no such motions. White was served with the warrant and arrested on October 28, 2011. She was released from jail that same day. A bench trial was held on January 18, 2012, 82 days later. Thus, White's trial was held within the time contemplated by R.C. 2945.71.

{¶17} Second, there are no errors in the bench trial of this case that are evident from the record. White was represented by counsel during the trial court proceedings and during this appeal. A timely bench trial was held, witnesses were presented, and White's attorney effectively examined or cross-examined each witness. The transcript of trial is in the record on appeal.

{¶18} In his no-merit brief, White's appellate counsel mentions manifest weight as a potential error, but ultimately concludes that such an argument would not support an appeal.

{¶19} Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In reviewing a manifest weight of the evidence argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* A reversal on weight of the evidence is ordered only in exceptional circumstances. *Id.*

{¶20} In conducting our review, we proceed under the theory that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not within our province to choose which one should be believed. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). Rather, we defer to the trier of fact who is best able to weigh the evidence and evaluate the credibility of witnesses by viewing the demeanor, voice inflections, eye movements, and gestures of the witnesses testifying before it. *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E. 1273 (1994); *State v. DeHass*, 10 Ohio St.2d 230, 231,

227 N.E.2d 1212 (1967).

**{¶21}** White was convicted of one count of interference with custody, in violation of R.C. 2919.23(A)(1) which provides: "No person, knowing the person is without privilege to do so or being reckless in that regard, shall entice, take, keep, or harbor a * * * child under the age of eighteen, or a mentally or physically handicapped child under the age of twenty-one * * * from the parent, guardian, or custodian of [that child]."

**{¶22}** It was undisputed at trial that White did not have permission from either parent to have C.M. in her care and custody. There was some conflicting testimony on a few other factual issues, namely, Kionna denied taking C.M. to White's home and denied that Callie was in the car with her when she picked up C.M. Instead, she testified that she saw C.M. on the street corner on September 26, 2011, was concerned about his black eyes and picked him up and took him to her house. She testified that only her three-year-old daughter was in the car with her at the time. She claimed that C.M. never went back inside Clarence's house to get a change of clothing. Kionna said she talked to Clarence briefly by phone after bringing C.M. back to her house, and that C.M. left her home while she went to use the restroom and she did not know where he went. According to Kionna, White never came to her house to pick up C.M.

**{¶23}** This testimony contradicted that of C.M. and Kejuana. C.M. testified that Kionna and Callie picked him up from Clarence's house and took him to Kionna's house, where he was picked up by White. He testified he spent the night there and then went to school from there in the morning. Seventeen-year-old Kejuana, who had a step-sister-like relationship with C.M. and was watching C.M. and her siblings after school on September 26, 2011, corroborated some of that testimony. She stated C.M. was picked up by two adult females, who did not ask permission to take C.M. She said C.M. retrieved clothing from inside the house before leaving.

**{¶24}** Resolving evidentiary conflicts such as the ones described above clearly fell within the province of the fact-finder, who weighed the evidence and ultimately found White guilty. White's conviction is not against the manifest weight of the evidence.

**{¶25}** Finally, there are no appealable issues with regard to White's sentence.

Misdemeanor sentences are reviewed for an abuse of discretion. R.C. 2929.22; *State v. Frazier*, 158 Ohio App.3d 407, 2004-Ohio-4506, 815 N.E.2d 1155, ¶15 (1st Dist. 2004.). An abuse of discretion means more than an error of judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶26}** The sentence imposed, one day in jail, with 90 days of EMHA, a $250 fine, 60 hours of community service and 18 months of intensive probation, was within the prescribed penalties for a first-degree misdemeanor. R.C. 2929.24(A)(1) (enumerating that the term of imprisonment for a first-degree misdemeanor shall be up to 180 days). White received jail-time credit for the one day she served upon her arrest. The trial court's sentencing decision was reasonable.

**{¶27}** In sum, as there are no appealable issues, the judgment of the trial court is affirmed and counsel's motion to withdraw is granted.

Donofrio, J., concurs.

Vukovich, J., concurs.