[Cite as *State v. Odey*, 2014-Ohio-1352.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 13 CO 23 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| LISA ODEY, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from Municipal Court,
                              Case No. 12 CRB 1166.

JUDGMENT:                     Affirmed. Counsel's Motion to
                              Withdraw Granted.

APPEARANCES:
For Plaintiff-Appellee:       Attorney Robert L. Herron
                              Prosecuting Attorney
                              Attorney Don Humphrey, Jr.
                              Asst. Prosecuting Attorney
                              38832 Saltwell Road
                              Lisbon, OH  44432

For Defendant-Appellant:      Attorney Richard Hura
                              9 East Park Avenue
                              Columbiana, OH  44408

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

                              Dated:  March 24, 2014

[Cite as *State v. Odey*, 2014-Ohio-1352.]

DeGenaro, P.J.

{¶1} Defendant-Appellant, Lisa L Odey, appeals the April 3, 2013 judgment of the Columbiana County Municipal Court convicting her of one count of disorderly conduct and sentencing her accordingly. Appointed appellate counsel filed a no-merit brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.E.2d 493 (1967), and *State v. Toney*, 23 Ohio App.2d 203, 262 N.E.2d 419 (7th Dist.1970), and requested leave to withdraw from the case. Odey filed a document captioned as a pro-se brief, which consisted of counsel's brief with Odey's handwritten notes in the margins of the brief and appended to it. A thorough review of the case file reveals that there are no appealable issues, and that the appeal is in fact frivolous. Accordingly, the judgment of the trial court is affirmed and counsel's motion to withdraw granted.

## Facts and Procedural History

{¶2} In the very early morning hours of December 31, 2012, Odey was arrested and charged by complaint with one count of disorderly conduct while intoxicated (R.C. 2917.11(B)(1)), a fourth-degree misdemeanor. Later that day she was arraigned, appointed counsel, executed a speedy trial, waiver and was released on a personal recognizance bond.

{¶3} The case proceeded to a bench trial on April 3, 2013. Salem Police Patrolman Brandon Smith testified that on December 30, 2012, he was working the night shift. During the very early morning hours of December 31, 2012, a call came in complaining about a domestic disturbance at an apartment in Salem, Ohio. He responded to the call along with Salem Police Officer Steve LaRosa. Officer Steve LaRosa was on worker's compensation leave at the time of trial and unavailable to testify.

{¶4} Ptl. Smith testified that upon entering the apartment building at approximately 4:14 a.m., he heard loud voices and immediately went to Apartment 33 on the second floor. As he approached the door he heard a male loudly calling a female "a dumb b*tch" and telling her to "shut the f*ck up." Then he heard the female tell the male to "shut the f*ck up." There were other apartments in close proximity to Apartment 33 and Ptl. Smith said he could plainly hear the disturbance in the common hallway. The

male, Clayton Powell, opened the apartment door and was instructed to get the female, Lisa Odey, and bring her to the door, which he did.

{¶5}    While they were talking, Ptl. Smith noticed a strong odor of alcoholic beverage.  He, along with the other officer, explained the nature of the complaint to Odey and Powell, ensured there was no physical violence taking place and had a 5-10 minute discussion with them telling them to keep quiet and stay calm and that if they did so there would be no further problems.

{¶6}    After the two went back into the apartment, the officers remained in the hallway to see if the disturbance would continue.  As soon as the door shut, neighbors from Apartment 35 and 34, Brenda Chriss and Jamie Webb, respectively, came into the hallway to complain that they had been disturbed by Odey and Powell's behavior.  Later Ptl. Smith took a written statement from Chriss, which the trial court determined was hearsay and was not admitted into evidence.

{¶7}    While the officers were talking to the neighbors, they heard a loud commotion from inside the apartment; both Odey and Powell were yelling at each other again.  The officers knocked on the door and both Powell and Odey answered.  Ptl. Smith said they gave Odey the option to leave or take a walk.  Ptl. Smith offered to give Odey a ride to her mother's house or to call her a taxi.  At one point, Odey agreed to leave, went inside to gather her belongings and then told the officers that she had changed her mind.  At that point, Ptl. Smith warned them to calm down and be quiet or they would be arrested.  The officers then left the apartment complex, clearing the call at 4:46 a.m.  At 4:49 a.m., when they were a few blocks down the street, a call came in from Webb, the neighbor, complaining of noise.   The officers returned to the apartment building and could hear Odey and Powell arguing again.  While standing outside the door to Powell's apartment, Ptl. Smith heard Powell call Odey a "dumb f*cking c*nt" and telling her to "get the f*ck out."  Odey responded by calling Powell a "f*cking a*shole."  They knocked on the door and arrested Odey and Powell for disorderly conduct.  Odey, who reeked of alcohol, struggled with officers as she was taken into police custody.  On cross, Ptl. Smith

testified that he did not use any tests, such as field sobriety tests or a Breathalyzer, to determine Odey's level of alcohol consumption.

**{¶8}** Detective Sergeant Christopher Gallo responded to the second call. He was the duty shift officer that evening. He arrived as the two were being arrested. He testified that Odey was "extremely intoxicated to the point where her speech was slurred; there was strong odor of alcohol emanating from her breath; her eyes were bloodshot. She was also staggering and unbalanced. She was also very vulgar with her language."

**{¶9}** Jamie Webb, the neighbor from Apartment 34, testified that on December 30, 2012, he came home from a dinner with his wife at around 10:30 or 11:30 p.m., and saw Powell in the hallway. Webb went to bed and his wife woke him up several times to complain about the noise from Powell's apartment and that the noise therefore disturbed and annoyed him. From Powell's apartment, he said he heard "a bunch of racket, a bunch of noise, both of them arguing back and forth, screaming."

**{¶10}** He made the 4:49 a.m. call to police because he heard Odey yell: "Someone help me. He's hurting me." Webb gave somewhat conflicting testimony about how much the noise disturbed him. At first he said he "probably lost a good three, four hours of sleep," because of it. Then on cross, he admitted he is a pretty sound sleeper and slept soundly except for when his wife woke him up to complain about the noise. On redirect and then recross, Webb testified that the arguing was ongoing through the night, that his wife woke him up several times to tell him about it, and that once awake, he then heard the noise for himself. He said that prior to calling the police, he heard the arguing for approximately 30 minutes. When the police arrived the second time, he opened up his apartment door just as his neighbor Chriss, opened hers. Webb said Chriss asked him if he was also bothered by the noise, and he said yes. According to Webb, Chriss informed him that she had already called the police to report the noise that evening.

**{¶11}** The State rested and the defense made a Crim.R. 29 motion for acquittal, which was denied.

**{¶12}** Odey then testified in her own defense. According to Odey, she went at Powell's apartment on the evening of December 30, 2012, to watch movies. She could

not remember what movies they watched. According to Odey, the neighbor, Webb, came over to Powell's apartment with the bottle of whiskey at around 8:30 or 9:00 p.m. and Webb began to drink heavily, ultimately drinking half the bottle.

**{¶13}** Odey claimed that Webb was drunk and got into an argument with Powell and that this disagreement was why Webb later called the police to complain. She stated: "* * * I think he just called the police to get back at Clay [Powell]." She claimed Webb lied on the stand, that he was not sleeping that evening as he had testified.

**{¶14}** Odey denied drinking any of the whiskey that night, though she said she had two beers during the movie. According to Odey, Powell had one shot of whiskey. She admitted she was arguing with Powell that evening, but claimed the argument was about the disagreement Powell had with Webb. She said if she yelled at Powell, she was only "trying to calm him down." She did not recall telling Powell to "shut the f*ck up," but admitted she might have called him an "a**hole." Odey claimed she was injured during her arrest that night. However, she denied any criminal culpability, stating: "I didn't break the law. I was just there."

**{¶15}** On cross, Odey testified that she believed she was arrested because she "ha[d] a prior record." Specifically, she said she had prior disorderly conduct convictions, but could not recall how many.

**{¶16}** After considering the evidence, the trial court found Odey guilty as charged. The case proceeded immediately to sentencing where the trial court ordered Odey to serve 30 days in jail, with jail-time credit of one day, and continued counseling while in jail. The trial court imposed a $250 fine, plus court costs to be paid in monthly installments of not less than $75.00 and to include a basic probation supervision fee of $10 per month until her obligation was paid in full.

### *Anders* **No-Merit Brief**

**{¶17}** An attorney appointed to represent an indigent criminal defendant may seek permission to withdraw if the attorney can show that there is no merit to the appeal. *See generally* Anders, 386 U.S. 738. To support such a request, appellate counsel is required to undertake a conscientious examination of the case and accompany his or her request

for withdrawal with a brief referring to anything in the record that might arguably support an appeal. *Toney*, 23 Ohio App.2d at 207. The reviewing court must then decide, after a full examination of the proceedings, whether the case is wholly frivolous. *Id.*

**{¶18}** In *Toney*, this Court established guidelines to be followed when counsel of record determines that an indigent's appeal is frivolous:

> 3. Where a court-appointed counsel, with long and extensive experience in criminal practice, concludes that the indigent's appeal is frivolous and that there is no assignment of error which could be arguably supported on appeal, he should so advise the appointing court by brief and request that he be permitted to withdraw as counsel of record.

> 4. Court-appointed counsel's conclusions and motion to withdraw as counsel of record should be transmitted forthwith to the indigent, and the indigent should be granted time to raise any points that he chooses, pro se.

> 5. It is the duty of the Court of Appeals to fully examine the proceedings in the trial court, the brief of appointed counsel, the arguments pro se of the indigent, and then determine whether or not the appeal is wholly frivolous.

> 6. Where the Court of Appeals makes such an examination and concludes that the appeal is wholly frivolous, the motion of an indigent appellant for the appointment of new counsel for the purposes of appeal should be denied.

> 7. Where the Court of Appeals determines that an indigent's appeal is wholly frivolous, the motion of court-appointed counsel to withdraw as counsel of record should be allowed, and the judgment of the trial court should be affirmed.

*Id.* at syllabus.

**{¶19}** In this case, Odey's appeal is wholly frivolous. First, Odey cannot argue that any errors occurred prior to her trial. Her speedy trial rights were not violated; she executed a waiver of time on December 31, 2012, the day she was arrested and charged. No errors in the pre-trial procedure are apparent from the record.

**{¶20}** After a review of the transcript which is a part of the appellate record, there are no errors in the bench trial of this case. Odey was represented by counsel during the trial court proceedings. Witnesses were presented, and Odey's court-appointed attorney effectively examined and/or cross-examined each witness. Trial counsel was constitutionally effective.

**{¶21}** In his no-merit brief, Odey's appellate counsel mentions manifest weight as a potential error, but ultimately concludes that such an argument would not support an appeal. Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In reviewing a manifest weight of the evidence argument, the appellate court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* A reversal on weight of the evidence is ordered only in exceptional circumstances. *Id.*

**{¶22}** In conducting our review, we proceed under the theory that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not within our province to choose which one should be believed. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). Rather, we defer to the trier of fact who is best able to weigh the evidence and evaluate the credibility of witnesses by viewing the demeanor, voice inflections, eye movements, and gestures of the witnesses testifying before it. *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E. 1273 (1994); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N .E.2d 1212 (1967).

{¶23} Odey was convicted of one count of disorderly conduct while intoxicated in violation of R.C. 2917.11(B)(1), which provides:

No person, while voluntarily intoxicated, shall do either of the following: * * * In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities, which conduct the offender, if the offender were not intoxicated, should know is likely to have that effect on others[.]

{¶24} Further, R.C. 2917.11(E)(3)(a), which elevates the offense to a fourth-degree misdemeanor, as charged here, provides: "Disorderly conduct is a misdemeanor of the fourth degree if any of the following applies: * * * The offender persists in disorderly conduct after reasonable warning or request to desist."

{¶25} Here there is more than ample evidence to support the conviction. Odey admitted to drinking that evening and officers testified that they noticed other indices of intoxication such as slurred speech, staggering, bloodshot eyes, a strong odor of alcohol emanating from her breath, the use of vulgar language and combative behavior. A fellow resident of the apartment building, Chriss, called police the first time, in the very early morning hours, to complain about the disturbance. Upon their arrival to the apartment building, police could hear Odey yelling and cursing from the apartment building hallway. Officers warned Odey to cease the behavior, but she did not.

{¶26} After Odey and Powell went back into the apartment, officers remained in the hallway to determine whether the disturbance would continue. As soon as the door shut, neighbors Chriss and Webb came into the hallway to complain that they had been disturbed by Odey and Powell's behavior. While officers were talking to the neighbors, they again heard Odey and Powell yelling at one another. Officers warned Odey and Powell to cease their behavior a second time. Ptl. Smith offered to give Odey a ride or to call her a taxi, but she ultimately declined. Officers then left the premises, only to be summoned back several minutes later, after Webb called police to complain.

{¶27} Webb testified that the noise definitely disturbed him. He said that the arguing was ongoing throughout the night, that his wife woke him up several times to complain about it and that once awake, he heard the noise for himself. He said that prior to calling police he heard the arguing for approximately 30 minutes.

{¶28} Odey testified that Webb was lying about being asleep that evening; she said Webb had actually been at Powell's apartment drinking when the two men got into an argument. Odey claimed Webb fabricated the noise complaint to police because he was mad at Powell. However, another neighbor, Chriss, also complained about the noise. In addition, police clearly heard the disturbance from the hallway on three separate occasions. Police warned Odey and Powell to quiet down on two occasions, but they did not comply.

{¶29} Moreover, resolving any evidentiary conflicts clearly fell within the province of the fact-finder, who weighed the evidence and ultimately found Odey guilty. Accordingly for all of these reasons, Odey's conviction is not against the manifest weight of the evidence.

{¶30} Finally, there are no appealable issues with regard to Odey's sentence. Misdemeanor sentences are reviewed for an abuse of discretion. R.C. 2929.22; *State v. White*, 7th Dist. No. 12 MA 47, 2012-Ohio-6136, ¶25. An "[a]buse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *State v. Dixon*, 7th Dist. No. 10 MA 185, 2013-Ohio-2951, ¶21.

{¶31} Here, the sentence imposed, 30 days in jail, was within the prescribed penalties for a fourth-degree misdemeanor. R.C. 2929.24(A)(4) (enumerating that the term of imprisonment for a fourth-degree misdemeanor shall be up to 30 days). Odey received jail-time credit for the one day she served upon her arrest. Odey was afforded her right to allocution. The trial court's sentencing decision was reasonable given Odey's lengthy history of alcohol-related offenses, as detailed during the hearing, and Odey's failure to respond to community control sanctions in the past. ("The Court has tried counseling; the Court has tried the STAR program; the Court has tried a Children's

Services Case Plan; the Court has tried probation.") Accordingly, there are no appealable errors concerning Odey's sentence.

### Pro-se Brief

**{¶32}** Finally, we turn to Odey's pro-se brief, which consists of nothing more than the facts and procedural history from the *Anders* brief filed by counsel with Odey's handwritten notes in the margins and a handwritten addendum with the heading "Conclusion," containing the following eight statements: "(1) Was unlawfully arrested and excessive force; (2) Jamie Webb lied first sentence after taking oath; (3) Only witness for defendant was not given an opportunity to testify; (4) Document filed was hearsay not fact; (5) One of three officers not there at trial; (6) Defendant sustained irreversible physical health and mental issues; (7) Rule 615 [sic] State v. Toney not submitted; (8) Asked for dismissal of charges but not granted for prior record."

**{¶33}** Even if Odey's conclusions can be construed as assignments of error, she provides no legal support for them, many of which are inappropriate in the context of this appeal or were not raised in the trial court. While some leeway can be given to pro-se litigants, nonetheless we are not required to consider a brief which totally fails to comport with the Appellate Rules. In the exercise of our discretion we will not do so here.

**{¶34}** In sum, upon a review of the entire record, there are no appealable issues. The judgment of the trial court is affirmed and counsel's motion to withdraw granted.

Donofrio, J., concurs.

Waite, J., concurs.