[Cite as *State v. Green*, 2014-Ohio-648.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 12 MA 226 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| SHAWN N. GREEN | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Court of
Common Pleas of Mahoning County,
Ohio
Case No. 12 CR 299

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellee: Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant: Atty. Desirae DiPiero
7330 Market St.
Youngstown, Ohio 44512

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: February 21, 2014

WAITE, J.

{¶1} Appellant Shawn Green appeals his conviction in Mahoning County Common Pleas Court for felonious assault, assault, resisting arrest, and possession of cocaine. In Appellant's single assignment of error he challenges the trial court's decision to admit video surveillance footage from the six surveillance cameras in the bar where the incident occurred. Appellant's assignment of error is without merit and is overruled. The judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} On the evening of March 15, 2012, Officers Quinn and Mulligan received a call from dispatch about an armed man who was fighting with two females in O'Malley's Bar on South Ave. in Youngstown. Both officers were in uniform when they responded to the call. When the two officers entered the bar a group of women said that Appellant was causing a disturbance and refusing to leave. Officer Quinn and her partner approached Appellant from two different directions as he stood near the bar. Quinn was directly in front of the bar, Mulligan approached from behind a short wall that separated the two rooms in the bar.

{¶3} Officer Quinn could see a bulge in Appellant's pocket, which she believed to be a firearm. As she approached Appellant she reached for the suspected gun. Appellant turned and punched Officer Quinn in the throat, causing her head to hit the wall behind her. Believing that Appellant had a gun, Quinn tried to subdue him with her taser as she was falling. At that moment, Officer Mulligan hurried to assist Officer Quinn. While Officer Mulligan tried to control Appellant he, and not Appellant, was hit by the taser when it deployed. At this point Officer Quinn

passed out. When she regained consciousness, she saw her partner struggling with Appellant, who continued to resist both officers' attempts to control him.

{¶4} Officer Mulligan testified that he was not initially aware he had been struck by the taser due to his struggle with Appellant. He believed at the time, because the two had responded to a call regarding an armed suspect, that the taser shot was the sound of a .22 discharging in close proximity. (Tr. Vol. II, p. 313.) Officer Mulligan's attempts to subdue Appellant were influenced by his belief that a gun had discharged. Additional officers responded to the call for assistance and when they arrived, the group was able to control Appellant. Officer Quinn then left the scene with paramedics and was treated for back sprain, neck sprain, and contusions. She did not participate further in the search of Appellant's clothing or the subsequent investigation of the incident. Officer Mulligan was transported and treated for taser punctures and injuries he sustained during his attempts to control Appellant.

{¶5} Officer Anderson testified that he responded to the request for assistance from Officers Quinn and Mulligan at O'Malley's Bar. He arrived at the same time as another officer, and the two entered the bar together and joined the struggle to control Appellant. Once Appellant was subdued, Officer Anderson noticed the bulge in Appellant's right pocket and removed a quantity of marijuana, cocaine, and packaging baggies. Appellant was charged with felonious assault on Officer Quinn; assault on Officer Mulligan; possession of cocaine; and resisting arrest.

{¶6} Officer Sweeney was not on the scene of the initial disturbance, but was assigned to investigate the assaults on Officers Quinn and Mulligan. Sweeney attempted to contact the owner of the bar to request any surveillance tape that might have been made of the incident. The officer reached Mr. David Fusillo, who described himself as co-owner of the bar. Sweeney met Fusillo at the bar and the two watched the surveillance footage taken the night of the altercation. The two were initially unable to copy the footage from the security system, so Officer Sweeney had another department employee who was familiar with that type of system transfer the data to a thumb drive. The system in the bar had six viewpoints and the data collected included all six. Officer Sweeney testified that the footage downloaded from the bar's security system had not been altered in any way. (Tr. Vol. II, p. 251.)

{¶7} Mr. Fusillo, the bar's co-owner, also testified at trial. He discussed the security and surveillance in place at the time of the incident. Fusillo had installed the video system himself, and described it as "a Swan system" that "records for 24 hours a day, seven days a week. Every 15 days it will start deleting itself. So it only records for 15 days. And it has night vision." (Tr. Vol. II, p. 265.) According to Mr. Fusillo, at the time of the incident the system involved six cameras, four of which covered all angles of the bar, including the spot where the altercation occurred. The cameras were linked to a DVR system that recorded the feed; the entire system was locked in Fusillo's office. Mr. Fusillo had the only key to the office, which was secured whenever he was absent.

**{¶8}** Mr. Fusillo did not see the actual incident, but the system passively recorded the altercation. He stated that he watched the footage for the first time with the investigating officers and he gave them permission to duplicate or extract the footage. (Tr. Vol. II, p. 267.) Fusillo testified that he did not alter or delete any of the footage. The material was secure in his office at all times and the DVR to which it is attached does not have the capacity to edit footage. (Tr. Vol., II, p. 268.) Mr. Fusillo also testified that the footage he was asked to authenticate at trial completely and accurately reflected the video he saw for the first time in his office with the investigating officer. He noted that the time-stamp shown in the footage does not reflect the accurate time because it does not reflect daylight savings time. He said that because he recorded the footage for personal use and knew it was an hour off, he never adjusted the clock when the time changed. (Tr. Vol. II, p. 269.) At trial, defense counsel objected both to the publication of the video to the jury and the admission of the video into evidence.

**{¶9}** The jury returned guilty verdicts on all four counts; convicting Appellant of felonious assault on Officer Quinn; assault on Officer Mulligan; resisting arrest; and possession of cocaine. On September 20, 2012, Appellant was sentenced to 10 years in prison on count one; one year on count two to be served concurrently with count one; one year on count three to be served concurrently with counts one and two; and six months on count four, also to be served concurrently with all counts. Appellant filed a timely appeal of that sentence.

<u>Assignment of Error</u>

THE TRIAL COURT ERRED WHEN IT ADMITTED SURVEILLANCE VIDEO FOOTAGE WITHOUT PROPER AUTHENTICATION.

**{¶10}** Appellant contends that the testimony offered by Officer Sweeney and Mr. Fusillo was insufficient to authenticate the video footage of the incident because neither man actually witnessed the incident in real time and therefore could not testify that the footage reflected a fair and accurate depiction of the events.

**{¶11}** "The admission of evidence is generally within the sound discretion of the trial court, and a reviewing court may reverse only upon the showing of an abuse of that discretion." *Peters v. Ohio State Lottery Comm.*, 63 Ohio St.3d 296, 299 (1992). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The decision to admit evidence is governed in part by Evid.R. 901, which requires authentication or identification. Evid.R. 901 provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The rule suggests several ways in which the general requirement of authentication can be accomplished using various types of evidence. Subpart (1) is applicable to the video offered here, and provides that material may be authenticated by a "witness with knowledge" who testifies that "a matter is what it is claimed to be." Evid.R. 901(B)(1).

**{¶12}** As Appellant notes, surveillance video is liberally admitted as a "silent witness" with sponsoring testimony similar to that provided here. (Appellant's Brf., p. 5.) "Under the silent witness theory, photographic evidence may be admitted upon a sufficient showing of the reliability of the process or system that produced the evidence." *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 753 N.E.2d 98 (1991), paragraph three of the syllabus. Photographic evidence includes video footage. *Id.* at 129.

> The admissibility of photographic evidence is based on two different theories. One theory is the "pictorial testimony" theory. Under this theory, the photographic evidence is merely illustrative of a witness' testimony and it only becomes admissible when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness' personal observation. * * * A second theory under which photographic evidence may be admissible is the "silent witness" theory. Under that theory, the photographic evidence is a "silent witness" which speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness. * * *

*Id.* at 129-130 citing *Fisher v. State*, 7 Ark.App. 1, 5-6, 643 S.W.2d 571, 573-574 (1982).

**{¶13}** Mr. Fusillo, like the witness in *Midland*, testified from personal knowledge about the installation of the surveillance system, the positioning of the cameras around the bar where the incident occurred, and the layout of the bar itself.

As co-owner of the bar, Mr. Fusillo implicitly relies on the system and its accuracy for security purposes in the day to day management of the bar. As did the witness in *Midland,* Mr. Fusillo testified that he was the custodian of the footage, he had not altered it in any way and that he knew of no method of altering the video. He stated that the video offered at trial accurately reflected what he observed when he first viewed the video on the system at the bar. Appellant did not offer at trial, and does not argue on appeal, that there is any defect as to what was depicted in the footage or that the footage was altered in any way. No expert testimony is required to substantiate the reliability of a video surveillance system. *Id* at 130. Hence, the testimony offered by Mr. Fusillo was adequate to introduce the video footage as a silent witness.

{¶14} A testimonial foundation for this evidence appears in the record. It is not necessary that the individual authenticating the footage must have actually witnessed the events as they occurred, merely that he or she is able to verify that the material is what it purports to be: in this instance, the complete surveillance footage of the incident. Evid.R. 901(B)(1). The testimonial foundation in this record was also supported by testimony from multiple participants in and witnesses to the altercation. There is ample evidence and testimony in the record regarding the altercation itself and the layout of the bar to satisfy the requirement that the record disclose "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901. The trial court's decision to admit this surveillance video was not an abuse of discretion and Appellant's single assignment of error is overruled.

## Conclusion

**{¶15}** The state's uncontradicted evidence as reflected in the record supports the admission of the surveillance video. Appellant's single assignment of error is without merit and is overruled. The judgment of the trial court is affirmed in full.

Donofrio, J., concurs.

Vukovich, J., concurs.