[Cite as *State v. Anderson*, 2014-Ohio-1831.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100090**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## STEPHAN ANDERSON

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-568529-A

**BEFORE:** Kilbane, J., Boyle, A.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** May 1, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender
Erika B. Cunliffe
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Oscar E. Albores
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Stephan Anderson ("Anderson"), appeals from his conviction for aggravated robbery. Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

{¶2} On November 28, 2012, Anderson was indicted for kidnapping, aggravated robbery, and felonious assault in connection with an incident that occurred outside of a convenience store on May 18, 2012. Anderson pled not guilty. On June 12, 2013, he executed a jury waiver and the matter proceeded to a bench trial.

{¶3} The state's evidence demonstrated that at approximately 11:45 p.m. on May 18, 2012, 61-year-old Gregory Perry ("Perry") went to Chillie's Food Mart ("Chillie's"), 2976 East 116th Street in Cleveland, to purchase a few items. While Perry was at the counter paying for his items, a man approached him and demanded money that Perry allegedly owed him. Perry later identified this man as Anderson. Perry insisted that he did not owe the man any money, and he exited the store. According to Perry, at the time he left the store, he had $35 to $40 in his pocket. Anderson approached him again outside of the store and punched him. Perry fell to the ground and became dazed from the attack. He was then repeatedly punched and kicked by Anderson and another man, and they then took his money. He had massive swelling to his nose, jaw, and eye. He was treated at University Hospitals for a fractured cheek and nose, bruised ribs, and a loose tooth that later became infected and required surgery. Photographs of his injuries

depict gross swelling to his lower cheek and mouth and extensive bleeding to his mouth.

{¶4} Two months after the attack, Perry identified Anderson as his assailant from a six-person photo array prepared by Officer Anthony Tomaro ("Officer Tomaro"). Perry testified that during the photo array, he was 100 percent certain that Anderson was his attacker, so he circled Anderson's photograph and wrote "100 percent." Perry also reviewed a surveillance video and photographs in court and identified Anderson as an individual wearing a blue shirt and white cap.

{¶5} Yasen Tayeh ("Tayeh"), the owner of Chillie's, testified that there are surveillance cameras throughout the inside and outside of the store. With regard to the events of May 18, 2012, Tayeh observed Perry enter the store and observed him being attacked in the parking lot. Tayeh called the police, but the attackers fled before the police arrived. Tayeh further testified that Anderson is a regular customer at the store. Tayeh stated that he was able to determine if a video from the system is a true and accurate copy. After reviewing the surveillance video, Tayeh determined that the video had not been altered, and he identified an individual who was wearing black pants, a black shirt, and a white cap with an orange tip as Anderson. Tayeh further testified that Anderson was at the store at the same time Perry was there. According to Tayeh, Anderson was wearing a black shirt, black pants, and a white cap with an orange tip.

{¶6} Cleveland Police Officer Eric Roberts ("Officer Roberts") testified that during the previous three years, he has worked at Chillie's as a private security officer.

In that capacity, he has become familiar with the customers, including Anderson who came to the store "quite often." Roberts testified that, the day after the attack, he viewed the surveillance video from the night of the attack so that he might be able to identify the attacker if he returned. After viewing the video, Roberts identified the assailant as Anderson, with 90 percent certainty. Approximately one week later, Roberts observed Anderson in the store, so he detained him and called the police. He was later arrested and charged in this matter.

{¶7} Officer Tomaro testified that Detective Campbell prepared the array of six photos, and they presented it to Perry. According to Officer Tomaro, Perry identified Anderson directly and did not hesitate.

{¶8} The case was submitted to the court on June 12, 2013. Two days later, the trial court convicted Anderson of all three offenses charged in the indictment. Proceeding to sentencing, the court determined that the offenses merged, and the state elected to have Anderson sentenced for aggravated robbery. He was sentenced to seven years of imprisonment and five years of postrelease control sanctions.

{¶9} Anderson appeals and assigns the following errors for our review:

I.      The trial court erred by permitting witnesses to testify concerning events about which they had no personal knowledge in violation of Mr. Anderson's rights to due process and Ohio rules of Evidence.

II.     Trial counsel was ineffective because he failed to challenge the eyewitness identification evidence introduced at trial.

III.     Mr. Anderson's right to due process was violated where the trial

court found him guilty of aggravated robbery where the evidence

was legally insufficient to support such a conviction.

## Claim of Error Regarding Hearsay

{¶10} In his first assignment of error, Anderson asserts that the trial court erred in permitting Tayeh and Officer Roberts to testify about the altercation when they did not personally witness it.

{¶11} A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to a defendant. *State v. Green*, 184 Ohio App.3d 406, 2009-Ohio-5199, 921 N.E.2d 276, ¶ 14 (4th Dist.).

{¶12} Evid.R. 602 provides:

Lack of personal knowledge

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness's own testimony.

{¶13} As explained in *State v. Green*, 7th Dist. Mahoning No. 12 MA 226, 2014-Ohio-648, ¶ 12, surveillance video is liberally admitted as a "silent witness" with sponsoring testimony:

'Under the silent witness theory, photographic evidence may be admitted upon a sufficient showing of the reliability of the process or system that produced the evidence.' *Midland Steel Prods. Co. v. U.A.W. Local 486,* 61 Ohio St.3d 121, 573 N.E.2d 98 (1991), paragraph three of the syllabus. Photographic evidence includes video footage. *Id*. at 129. The admissibility of photographic evidence is based on two different theories. One theory is the 'pictorial testimony' theory. Under this theory, the photographic evidence is merely illustrative of a witness's testimony[,] and it only becomes admissible when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness's personal observation. * * * A second theory under which photographic evidence may be admissible is the "silent witness" theory. Under that theory, the photographic evidence is a "silent witness" which speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness. * * * *Id*. at 129-130, citing *Fisher v. State*, 7 Ark.App. 1, 5-6, 643 S.W.2d 571, 573-574 (1982).

*Accord State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840.

**{¶14}** Under the silent witness theory, photographic evidence may be admitted upon a sufficient showing of the reliability of the process or system that produced the evidence. *State v. Arafat*, 8th Dist. Cuyahoga No. 85847 2006-Ohio-1722, ¶ 55, citing *Midland Steel Prods. Co.,* 61 Ohio St.3d 121, 573 N.E.2d 98 (1991).

**{¶15}** Similarly, in *State v. Milton*, 8th Dist. Cuyahoga No. 92914, 2009-Ohio-6312, ¶ 9, this court held that there was sufficient evidence to support the defendant's conviction where he was identified from a surveillance video.

**{¶16}** In this matter, Tayeh established that the surveillance video accurately depicted events of the evening, and he identified Anderson, who is a regular customer at the store. Officer Roberts also testified that he knows Anderson as a regular customer, and he also identified him from the video. In addition, the video served as a silent witness herein under *Midland Steel Prods. Co.*

{¶17} The first assignment of error is without merit.

Claim of Error Regarding Ineffective Assistance of Counsel

{¶18} To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 692-693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. McGuire*, 80 Ohio St.3d 390, 397, 1997-Ohio-335, 686 N.E.2d 1112. First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Second, defendant must show a reasonable probability that, but for counsel's perceived errors, the results of the proceeding would have been different. *Strickland* at 687-688. In addition, a properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988).

{¶19} In order to establish deficient performance, it must be shown that, under the totality of the circumstances, counsel's representation fell below an objective standard of reasonableness. *Id*. at 688. A court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 689. Debatable trial tactics and strategies generally do not constitute deficient performance. *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995-Ohio-171, 656 N.E.2d 643. In order to establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.  *Strickland*, 466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the proceeding.  *Id.*

**{¶20}** With regard to the first requirement, Anderson complains that his trial attorney did not file a motion to suppress Perry's identification of him.  He further complains that trial counsel did not determine whether the officers complied with R.C. 2933.83 in conducting the photo array.[1]

**{¶21}** The failure to file a motion to suppress is not per se ineffective assistance of counsel.  *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52.  Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted.  *Id.*

**{¶22}** In this matter, there is nothing in the record to demonstrate that the identification was suggestive.  Moreover, as explained in an analogous case, *State v. Quarterman*, 8th Dist. Cuyahoga No. 99317, 2013-Ohio-4037, ¶ 27:

---

[1] R.C. 2933.83, which went into effect in July 2010, requires any law enforcement agency or criminal justice entity that conducts live lineups and photo lineups to adopt specific procedures for conducting the lineups, including the use of "a blind or blinded administrator" to conduct a live or photo lineup and a written record of the lineup that includes all results obtained during the lineup, the names of all persons at the lineup, the date and time of the lineup, and the sources of the photographs used in the lineup.  Further, if a blind administrator is used, the administrator is required to inform the eyewitness that the suspect may or may not be in the lineup and that the administrator does not know who the suspect is. *State v. Alexander*, 8th Dist. Cuyahoga No. 98941, 2013-Ohio-2533, ¶ 25.  The "penalty" for failure to comply with R.C. 2933.83 is a potential jury instruction regarding the noncompliance, not immediate suppression.  *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 84.  The fact of noncompliance is admissible to support any claim of eyewitness misidentification at trial. R.C. 2933.83(C)(2).

Even if we assumed that the identification procedure in this case was unduly suggestive, both victims made an in-court identification of appellant as one of the men involved in the robbery thus rendering the photo array identification duplicative. Because the photo array was duplicative evidence, we cannot say the outcome of the trial would have been different had the photo array been excluded. *See, e.g., State v. Brown*, 8th Dist. Cuyahoga No. 80412, 2002-Ohio-4577, ¶ 23. Consequently, the admission does not rise to the level of plain error. Furthermore, the present case was a bench trial and we note that appellate courts presume that a trial court considered only relevant and admissible evidence in a bench trial. *State v. Crawford,* 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659, ¶ 61; *State v. Chandler*, 8th Dist. Cuyahoga No. 81817, 2003-Ohio-6037, ¶ 17.

{¶23} Likewise in this matter, at trial Perry identified Anderson as his assailant with 100 percent certainty. Officer Roberts also identified him with 90 percent certainty. Because the photo array was duplicative of this evidence, and in light of the fact that this was a bench trial, we cannot say the outcome of the trial would have been different had the photo array been excluded.

{¶24} This portion of the assignment of error is without merit.

{¶25} Anderson additionally complains that his trial counsel was ineffective for failing to object to Officer Tomaro's testimony that Perry had "100 percent" confidence in his identification of Anderson as the assailant.

**{¶26}** In general, witness's opinion regarding the veracity of another witness is inadmissible. *See State v. Combs*, 1st Dist. Hamilton No. C-120756, 2013-Ohio-3159, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 122-123; *State v. Huff*, 145 Ohio App.3d 555, 561, 763 N.E.2d 695 (1st Dist.2001).

**{¶27}** Here, however, the record indicates that Perry testified that when the photo array was presented, he identified Anderson's photograph from the array, then wrote "100 percent." (Tr. 57.) The officer's testimony was therefore merely cumulative of Perry's testimony on direct examination. In any event, this testimony was not improper vouching. Rather, Officer Tomaro testified that during the photo array Perry was 100 percent confident in the identification of Anderson.

**{¶28}** This portion of the assignment of error is therefore without merit.

**{¶29}** The second assignment of error is without merit.

Claim of Error Regarding the Sufficiency of the Evidence

**{¶30}** Anderson next complains that there is insufficient evidence to support his conviction for aggravated robbery.

**{¶31}** In reviewing the sufficiency of the evidence to support a criminal conviction, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶32}** In this matter, Anderson was convicted of aggravated robbery in violation of R.C. 2911.01(A)(3) which provides:

> No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> * * *
>
> (3) Inflict, or attempt to inflict, serious physical harm on another.

**{¶33}** In this matter, photographs place Anderson in the store while Perry was there, and Perry testified that Anderson confronted him at the counter then attacked him outside, repeatedly punched and kicked him after he fell to the ground. Perry also testified that the money from his front pocket was taken during the attack. Perry's face was grossly distorted from the attack and he suffered a fractured nose, fractured cheek, and other injuries. A video depicts the attack, and Tayeh and Officer Roberts identified Anderson as the attacker in the video. On this record, a rational trier of fact could have found the essential elements of aggravated robbery beyond a reasonable doubt. We therefore find sufficient evidence to support the conviction.

**{¶34}** The third assignment of error is without merit.

**{¶35}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, A.J., and
TIM McCORMACK, J., CONCUR