[Cite as *State v. Craig*, 2026-Ohio-200.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ALICIA CRAIG,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 CO 0021

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2024-CR-552

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito J. Abruzzino,* Columbiana County Prosecutor and *Atty. Christopher R. W. Weeda,* Assistant Prosecutor, for Plaintiff-Appellee

*Atty. Rhonda G. Santha*, for Defendant-Appellant

Dated:  January 22, 2026

**WAITE, P.J.**

{¶1} Appellant Alicia Craig was accused of igniting a fire in the bedroom of an apartment building in Salem, Ohio where she and her boyfriend were staying. She was convicted by a jury of two counts of aggravated arson and was sentenced to twelve to fifteen years in prison. She argues on appeal that video and audio surveillance files should not have been admitted as evidence because they violated the best evidence rule. The record reflects that the digital clips were exact copies of the original files taken from a DVR at the apartment building where the fire occurred. The clips were properly authenticated, and the trial judge did not abuse his discretion in allowing the digital media files to be admitted. She also argues that the trial judge committed plain error by not sua sponte striking the testimony of the fire marshal who appeared as an expert witness because his testimony was not credible. Credibility is determined by the jury, and the expert witness testimony is fully supported by the record. Appellant's assignments of error are without merit, and her convictions and sentence are affirmed.

Facts and Procedural History

{¶2} On October 9, 2024, Appellant was indicted in the Columbiana County Court of Common Pleas on two counts of aggravated arson pursuant to R.C. 2909.02(A)(1), first degree felonies. The charges arose from an altercation Appellant had with her boyfriend, Nicholas Edwards ("Edwards") on May 2, 2025 at 647 E. Sixth Street, Apartment 8, in Salem, Ohio. The address contains a two-story, eight-unit apartment building. Appellant and Edwards were temporarily staying in the apartment, which was leased to another person. They became involved in a domestic dispute on May 2, 2025. At approximately 5:34 p.m. on that date, the police received multiple calls reporting that

there was a fire in the building. The firefighters arrived within a few minutes of receipt of the distress calls. Appellant had already left the scene by the time firefighters arrived. The building was evacuated, all the tenants were accounted for, and the fire was extinguished. Two firefighters were injured responding to the fire. The circumstances of the fire were deemed suspicious, and it was later determined that Appellant had caused the fire, leading to her indictment. Count one involved the firefighters who were injured responding to the fire. Count two referenced the tenants in the apartment building.

{¶3} Jury trial began on June 2, 2025. The state presented three witnesses: Scott Mason, Fire Chief of the City of Salem; Richard Todd Stitt, Assistant Fire Marshal for the State Fire Marshal's Office; and Detective Brad Davis of the Salem Police Department. The state submitted numerous photos of the fire, as well as surveillance video and audio from the apartment building from the period both before and during the fire. Fire Marshal Stitt testified as an expert witness. Appellant Alicia Craig testified in her own defense. The defense did not offer a rebuttal expert witness.

{¶4} Witnesses at trial established that Appellant was in the apartment prior to and at the time the fire started on May 2, 2025. Appellant and Edwards had been loudly arguing the night before and during the day of the fire. A neighbor heard Appellant and Edwards arguing, and heard Appellant say, "[w]ell, it's up in flames now." (Trial Tr., pp. 358-359.) After the fire started, Appellant packed a bag and fled, telling Edwards: "Burning it all down, all of it. Fuck you. It's all up in flames." (Trial Tr., pp. 300-301; Exh. 37.) Appellant got into a borrowed pickup truck and left the area at 5:34 p.m.

{¶5} Eleven calls were made to 911 regarding the fire. None were from Appellant. As Appellant had thrown Edwards's cell phone out of the apartment window,

he was not able to report the fire. The fire's flames were visible to people passing by. The fire caused considerable smoke, soot, and water damage to the building and caused the roof to collapse. Multiple people, including tenants who were in the building at the time, were placed at risk of harm. One firefighter's arm was injured. Another firefighter twisted his knee after stepping in a hole, and was transported to a hospital for treatment. The fire completely consumed apartment eight and damaged other portions of the building.

{¶6} Chief Mason considered the circumstances of the fire suspicious and ordered an investigation. Fire Marshal Stitt concluded that the fire was an incendiary fire that began in apartment eight. The surveillance video recorded Appellant saying: "Fuck you. The bedroom is on fire. It's going to burn. It's all going to burn. Why are you doing this to me?" (Trial Tr., pp. 273-274; Exh. 37.)

{¶7} Surveillance video showed that Edwards left the apartment at 5:32 p.m., and returned a few seconds later. Appellant can be heard saying "Fuck you. Your bedroom's on fire." Edwards immediately left again. At 5:33 p.m. Appellant exited the apartment, carrying three bags. Smoke can be seen pouring from the apartment and a smoke alarm can be heard ringing. Appellant took one of the bags and proceeded down the stairs. She can be seen leaving the building at 5:33 p.m. A camera recorded her driving away in a pickup truck at 5:34 p.m. Also at 5:34 p.m. a neighbor can be seen running into apartment 8 and then running back out and into the apartment next door, and shutting the door. After this there is so much smoke that nothing can be seen in the video of the second floor. The first floor video camera recorded a neighbor at 5:35 p.m. yelling

"[e]verybody get out." Four tenants can be seen leaving at 5:36 p.m., and can be heard coughing.

{¶8} Police searched for Appellant after the fire to question her. On May 10, 2025, she was observed by police sitting at a bench in Memorial Park in Salem. Detective Davis, along with another officer (Detective Beeson), approached Appellant and asked to speak with her in an informal conversation. She agreed, and the conversation was recorded. A transcript of this recording is in the record. Appellant stated that she was very angry on the day of the fire, that Edwards was terrified of her, and admitted she was the person on the surveillance video screaming at Edwards. Detective Davis asked why she did not call the fire department. She said she had no phone and that she told Edwards to call. However, later in the conversation she admitted that she threw Edwards's phone out of the window prior to the fire. When asked whether she said "I'm going to burn your stuff up," she did not respond. Detective Davis testified that he asked Appellant on May 10, 2025 whether she, in a fit of rage, started the fire on purpose, but Appellant did not respond. (Trial Tr., p. 330.)

{¶9} Fire Marshal Stitt testified as an expert witness, without objection from Appellant's counsel. Stitt, after an extensive investigation, concluded that the fire was an incendiary fire intentionally started in the bedroom of the apartment using an open flame, and that an open flame could include something such as a cigarette lighter or a lit cigarette. (Trial Tr., pp. 233, 242.)

{¶10} Appellant testified that she and Edwards were homeless at the time of fire and were staying in the apartment as a favor from a friend. She testified that she had a "horrific fight" with Edwards on the day of the fire. (Trial Tr., p. 414.) She stated:

Case No. 25 CO 0021

A.  I've known of a house fire because a lady fell asleep smoking, and her house burnt down, and she was not held responsible for it.

Q.  Okay.  But this wasn't you sleeping and falling asleep with a cigarette; right?  This was you and your boyfriend having an all-out argument and fight, throwing one another's things out the windows, and you threatening to throw his stuff on a fire that was in the bedroom?

A.  Yes.

(Trial Tr., p. 413.)

{¶11}  The jury found Appellant guilty of both counts on June 5, 2025.  Sentencing was held on June 6, 2025.  The court sentenced Appellant to an indefinite six-year minimum prison term for both counts, to be served consecutively, with a maximum term of fifteen years.  Appellant was also required to register as a lifetime arson offender, and post-release control was imposed.  The judgment entry was filed on June 13, 2025, and a nunc pro tunc judgment entry was filed on June 18, 2025.  This timely appeal was filed on June 27, 2025.  Appellant has raised two assignments of error.

## ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT DENIED APPELLANT A FAIR TRIAL BY FAILING TO SUSTAIN THE OBJECTION TO THE ADMISSION OF A SURVEILLANCE CAMERA DVD VIDEO COPY OF THE INTERIOR AND EXTERIOR OF THE APARTMENT BUILDING WHERE THE FIRE IN THIS CASE

Case No. 25 CO 0021

OCCURRED AS WELL AS THE ADMISSION OF THE EXTRACTED, SEPARATE AUDIO PORTION OF THE VIDEO CLIPS IN DVD FORM.

{¶12} Appellant argues that the copy of the surveillance video from 647 E. Sixth Street, Salem, should not have been admitted at trial because it was not the original video. She also objects to a digital audio clip taken from the surveillance video that was introduced as evidence at trial. Both the video (which contains audio) and the separate audio clip are contained on DVD discs that were accepted into evidence as State's Exhibits 37 and 38. Appellant argues that Evid.R. 1002, usually referred to as the "best evidence rule," requires original recordings to be used as evidence, except as otherwise permitted by the Rules of Evidence. She contends that duplicates are only permitted under Evid.R. 1003 when there is a question as to authenticity or when it would be unfair to admit a copy. Appellant claims that Exhibits 37 and 38 are not the original surveillance videos and are not accurate copies.

{¶13} Appellant's arguments are linked to objections made at trial by her trial counsel. As the video clips from the apartment on the day of the fire were about to be published to the jury, counsel objected that the DVD clips were not the best evidence, and that the video clips that he viewed were on a different machine. (Trial Tr., p. 280.) Counsel believed that when he observed the video it was from the actual machine that recorded the video. However, the prosecutor explained that what counsel had seen was a copy of the video that was placed on Detective Davis's external hard drive. (Trial Tr., p. 281.) "So in order to admit them into evidence . . . we need to make actual copies of them for purposes of admitting them into the record." (Trial Tr., p. 281.) The prosecutor stated that Detective Davis had already testified that the video and audio clips were true

and accurate recordings as they were retrieved from the DVR system at 647 E. Sixth Street, that they were shown to counsel, and that the DVD copies accurately reflected the original content. The court stated: "So it's just a different format?" The prosecutor answered: "It's just a different format, Your Honor." (Trial Tr., p. 281.) The court overruled the objection.

> Evid.R. 1003 provides that a duplicate is admissible to the same extent as the original unless a genuine question is raised as to the authenticity of the original or it would be unfair to admit the duplicate in lieu of the original. This does not place any limitations on how a party may authenticate a document, instead allowing all duplicates into evidence *to the same extent* as the original. Thus, this allows a party to authenticate a duplicate in any manner authorized under the law.

(Emphasis in original.) *State v. Lake*, 2003-Ohio-332, ¶ 17 (7th Dist.).

**{¶14}** Evid.R. 901 requires evidence to be properly authenticated.

> The provisions of Evid.R. 901(A) require only that a proponent of a document produce "evidence *sufficient to support a finding* that the matter in question" is what the proponent claims it to be. (Emphasis added.) This low threshold standard does not require *conclusive* proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that the document is what its proponent claims it to be.

(Emphasis in original.) *State v. Easter*, 75 Ohio App.3d 22, 25 (4th Dist.1991).

Case No. 25 CO 0021

**{¶15}** Video evidence is authenticated in the same manner as photographic evidence. *State v. Haywood*, 2023-Ohio-1121, ¶ 52 (7th Dist.). "[P]hotographic evidence may be admitted upon a sufficient showing of the reliability of the process or system that produced the evidence." *State v. Green*, 2014-Ohio-648, ¶ 12 (7th Dist.). Authenticity is an evidentiary matter that lies within the discretion of the trial court. *Id.* at ¶ 11. A trial court's ruling on authenticity can only be reversed based on an abuse of discretion. *Id. State v. Shakoor*, 2010-Ohio-6386, ¶ 17 (7th Dist.). "Abuse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *State v. Dixon*, 2013-Ohio-2951, ¶ 21 (7th Dist.).

**{¶16}** Detective Davis authenticated the DVD recordings. He explained that the DVD recordings were exact duplicates of the material on his computer hard drive, and those recordings were taken from the DVR in the apartment building. He described how the DVR system worked, how he obtained the DVR machine, how he extracted the files, and how the files ended up on the DVDs. He also explained that there was software on the DVDs to allow for viewing the recordings. We have viewed and listened to the digital files that were admitted into evidence and there is no indication that these are different from the evidence used and discussed at trial.

**{¶17}** This case is similar to the *Haywood* case earlier cited. In *Haywood*, the defendant challenged the admission of a surveillance video at trial because the original DVR recording machine was not admitted. Instead, a copy of the video on a flash drive was submitted as evidence. We stated that it was "not clear why Appellant believe[d] this was a legal error." *Id.* at ¶ 63. This is because in *Haywood*, a law enforcement officer

testified that the DVR machine was sent to the state BCI lab, a copy of the video was retrieved, and the copy was placed on a flash drive. Similarly, in the instant case Detective Davis testified about the original DVR machine, the process of extracting the video, and the chain of custody. He testified that the digital video on the DVDs submitted as evidence was an exact copy of the original. The very low bar for establishing authenticity has been met in this case, and there was no abuse of discretion by the trial court allowing the admission of this evidence. Appellant's first assignment of error has no merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ITS FAILURE TO *SUA SPONTE* STRIKE THE TESTIMONY OF FIRE MARSHAL TODD STITT FOR HIS FIRE CAUSE DETERMINATION OF "INCENDIARY," WHICH REQUIRES AN INTENTIONAL ACT.

**{¶18}** Appellant argues that the expert testimony of Fire Marshal Stitt should have been stricken sua sponte by the trial judge because Stitt was not credible. Stitt testified that there are four causes of fires: natural, incendiary, accidental, and undetermined. (Trial Tr., pp. 232-233.) Stitt testified that an incendiary fire is deliberately or intentionally set. (Trial Tr., p. 233.) Stitt filed a report and testified that the fire started in the northeast area of the bedroom and was intentionally started with an open flame using combustible material in the room. (Trial Tr., p. 233.) As such, Stitt concluded that the fire was incendiary and constituted arson. (Trial Tr., p. 233.)

Case No. 25 CO 0021

{¶19} There was no objection to any of this testimony. Without objection, the error being raised by Appellant can only be reviewed for plain error. *State v. Givens*, 2024-Ohio-2563, ¶ 13 (7th Dist.). Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court. Crim.R. 52(B). Plain error is a discretionary doctrine that is only used in exceptional circumstances, when required to avoid a manifest miscarriage of justice. *State v. Noling*, 2002-Ohio-7044, ¶ 62. To establish plain error, the defendant must demonstrate that the court committed an obvious error and must show that the error affected the outcome of trial. *State v. Graham*, 2020-Ohio-6700, ¶ 93. In other words, the appellant must show that the outcome would have been different absent the plain error. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶20} Appellant does not challenge Stitt's expert credentials. Appellant's trial counsel stated in court that he did not object to Stitt as an expert. (Trial Tr., p. 201.) Appellant merely contends that Stitt was not credible. The "trial court is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. White*, 2018-Ohio-1339, ¶ 11 (7th Dist.), citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).

{¶21} Appellant, without any authority, claims an incendiary fire can only be initiated by open flames applied to a combustible material, and then claims there was no open flame in this case. However, Appellant actually cites a definition of incendiary that does not include the "open flame" requirement and merely states that an incendiary fire is deliberately set with the intent to cause a fire in an area where a fire should not naturally occur. Further, Stitt concluded there was use of an open flame and that the fire in

question was started with an open flame. Appellant admits that there were numerous combustible materials in the room such as clothing, carpet, wood, or polyurethane foam. Although Appellant believes that her testimony may have contradicted Stitt's testimony, she does not specifically cite to any of her testimony to support this argument. Since Appellant does challenge Stitt's credentials as an expert, and presented no evidence to contradict Stitt's testimony, it was within the province of the jury to believe or disbelieve Stitt. The jury apparently believed his testimony.

{¶22} Appellant takes issue with a few other aspects of Stitt's testimony, alleging that he failed to interview witnesses, found no evidence of an accelerant, and that he was not aware of any video showing a person starting the fire using an accelerant. None of these three have any impact as to whether the fire was incendiary or whether Stitt's expert opinion was correct or credible. Stitt found ample evidence that there were combustible materials in the bedroom, and Appellant agreed with that testimony. Stitt testified that an open flame can consist of a cigarette lighter or even a lit cigarette itself (Trial Tr., p. 242), and Appellant admitted she was a smoker and was smoking when the fire occurred.

{¶23} As far as examining witnesses, Stitt did speak to various people about the fire, including firefighters, police, and others who were investigating the crime. For example, his report states that he interviewed the owner of the apartment, Thomas Eastek. Thus, Appellant's allegation that Stitt did not interview witnesses is incorrect. Stitt also examined the fire scene, investigated the entire apartment building, took numerous photos of the fire scene (29 of which were entered into evidence), collected debris from the fire, and used a K-9 officer to help determine whether combustible liquids were used to start the fire (none were found by the laboratory examination of the items

collected). Stitt concluded that the fire started in the northeast area of the bedroom by a person using an open flame that ignited combustible materials in the bedroom, and was an incendiary fire (meaning a deliberately and intentionally set fire). (Trial Tr., p. 233.)

**{¶24}** We note that at oral argument Appellant additionally contended that federal guidelines have abolished the category of "incendiary," and so it was improper for Stitt to have so classified this fire. Appellant appears to believe that Ohio rules in this regard must comport with federal. Regardless, this issue was not briefed, and so was not properly raised for the first time at oral argument in this matter.

**{¶25}** Even without Stitt's testimony, there is considerable evidence that Appellant caused the fire and that this act was intentional. The video evidence establishes that Edwards was not in the apartment when the fire started. Appellant can be heard shouting at or very near the time the fire started: "Burning it all down, all of it. Fuck you. It's all up in flames." (Trial Tr., pp. 300-301; Exh. 37.) She admitted to smoking a lit "blunt" when the fire started, and that a cigarette or "blunt" could cause a fire. When asked if she and Edwards had an argument and if she threatened to throw his belongings on a fire in the bedroom, she answered "Yes." (Trial Tr., p. 413.) She testified that she threw Edwards's phone out the window. It is logical to infer from this testimony that Appellant prevented Edwards from calling 911 to report the fire. Within one minute after telling Edwards that the bedroom was on fire and his belongings were burning, she fled the scene in a pickup truck. She did not call 911 to report the fire at any time. All of this evidence tends to show that she was in the apartment alone, had the ability to start a fire, had materials to create an incendiary fire, had a motive to start the fire, made statements showing her intent to cause a fire, and attempted to prevent the fire from being reported. Based on all

of this evidence, and based on the power of the jury to determine the credibility of testimony, there is no plain error in this case in the jury's reliance on the testimony and expert conclusions of Fire Marshal Stitt. Appellant's second assignment of error is without merit and is overruled.

## Conclusion

{¶26} Appellant challenges her conviction on two counts of aggravated arson. She argues video and audio evidence should not have been admitted at trial because they violated the best evidence rule found in Evid.R. 1003. The state made copies of surveillance videos (including audio) that were recorded at the time of fire. The state also extracted the audio from the video files and separately copied the audio files to a disk. The digital clips were exact copies of the original files taken from a DVR at the apartment building where the fire occurred. The DVD recordings of those clips were introduced as evidence and were properly authenticated and were presented to the jury. Appellant has not shown how these recordings may have violated the best evidence rule, and her first assignment of error has no merit. She also contends that the trial judge committed plain error by failing to strike the expert witness testimony of the fire marshal, particularly as to his conclusion that the fire was an incendiary fire that was intentionally started. Appellant believes the fire marshal was not credible, but credibility is determined by the jury. The witness fully supported his opinion that the fire was incendiary, and Appellant has cited to nothing in the record to undermine that opinion. Further, there is ample support in the record as a whole, including Appellant's own testimony, to support the conclusion that she set the fire intentionally. Appellant's second assignment of error is also without merit, and her convictions and sentence are affirmed.

Case No. 25 CO 0021

Robb, J. concurs.

Dickey, J. concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**