[Cite as *State v. Dixon*, 2013-Ohio-2951.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 10 MA 185 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| MELVIN DIXON, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from Common Pleas
                               Court, Case No. 07 CR 170.


JUDGMENT:                      Affirmed.


APPEARANCES:
For Plaintiff-Appellee:        Attorney Paul J. Gains
                               Prosecuting Attorney
                               Attorney Ralph M. Rivera
                               Assistant Prosecuting Attorney
                               21 W. Boardman St., 6th Floor
                               Youngstown, OH  44503


For Defendant-Appellant:       Attorney J. Dean Carro
                               University of Akron-School of Law
                               Legal Clinic – Appellate Review Office
                               Akron, OH  44325-2901


JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite


                               Dated:  June 27, 2013

DeGenaro, P.J.

{¶1} Defendant-Appellant, Melvin Dixon, Jr. appeals the October 28, 2010, verdict of the Mahoning County Court of Common Pleas convicting him of aggravated murder and aggravated robbery with accompanying firearm specifications and having a weapon under disability. Dixon first contends that the trial court erred when it permitted the prosecution to exercise a peremptory challenge in a racially discriminatory manner thereby violating the Equal Protection Clause of the Fourteenth Amendment. Second, he asserts that the trial court erred when it did not allow him to introduce a State witness' prior conviction for obstruction of official business in order to impeach her testimony under Evid.R. 609(A)(3). Finally, Dixon contends the trial court erred by sentencing him consecutively on the offenses of aggravated murder and aggravated robbery as they were allied offenses of similar import and as such should have been merged at sentencing.

{¶2} Upon review, all of Dixon's arguments are meritless. First, the trial court's finding that no purposeful discrimination occurred by striking a prospective African-American juror was not clearly erroneous. Second, the trial court did not abuse its discretion by refusing to admit testimony pertaining to a prior conviction for obstruction of official business as that offense does not necessarily rely upon dishonesty or a false statement as contemplated by Evid.R. 609. Finally, the offenses of aggravated murder and aggravated robbery are not allied offenses of similar import, nor were they committed with the same animus, and as such were correctly not merged at sentencing. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} On February 8, 2007, Melvin Dixon, Jr. was indicted by the Mahoning County Grand Jury on counts of aggravated murder (R.C. 2903.01(B)(F)), an unclassified felony, with an accompanying R.C. 2941.145(A) firearm specification; aggravated robbery (R.C. 2911.01(A)(1)(B)), a first-degree felony, with an accompanying R.C. 2941.145(A) firearm specification; and having a weapon while under a disability (R.C. 2923.13(A)(3)(B)), a third-degree felony. The indictment alleged that Dixon purposely caused the death of Edward Agee while committing or attempting to commit, or in fleeing

immediately after committing or attempting to commit, aggravated robbery.

{¶4} The case proceeded to a jury trial on October 25, 2010 on the aggravated murder charge and the aggravated robbery charges; Dixon consented to bifurcation and waived a jury on the weapons under disability charge.

{¶5} During voir dire, the State exercised a peremptory challenge removing prospective juror McDuffie, an African American. Dixon later objected arguing that there was no reasonable basis for this challenge. The State countered that McDuffie was excused because she had a tendency to interrupt. He did not want her to bully the room and prevent other jurors from fulfilling their duty and expressing their own opinion. The trial court overruled Dixon's objection.

{¶6} At trial the following facts were adduced. On May 2, 2006, Dixon contacted Jamaad Jackson about planning a robbery. Later that evening, Dixon, Jackson, Maurice Brooks and Reggie Everson drove to Auto Zone with the intention of committing a robbery. Brooks waited in the vehicle around the corner while the other three men entered the Auto Zone wearing masks and carrying guns. Inside the store, Jackson raised a gun at the victim-employee, Edward Agee, and a struggle ensued between the two. Dixon approached the struggle and shot Agee. The three fled the store, got into the waiting car and returned to the home of Erika Hallman, the mother of Dixon's child. Dixon was arrested on February 2, 2007.

{¶7} Hallman testified during the State's case. In an unrelated criminal proceeding, she had been convicted of obstruction of official business, a misdemeanor. Dixon argued that Evid.R. 609 allowed him to cross-examine Hallman about this prior conviction in order to impeach her credibility. The trial court denied his request. Dixon did not offer a formal objection to this ruling; however, he made a proffer for purposes of appeal.

{¶8} After the State rested, the defense made a Crim.R. 29 motion for acquittal, which was overruled. The defense then rested without presenting any witnesses. The jury found Dixon guilty of aggravated murder, aggravated robbery and both accompanying firearm specifications. On the bifurcated charge of having a weapon under disability, the

trial court found Dixon guilty on that charge based on the evidence produced during the jury trial.

**{¶9}** Sentencing was held on November 29, 2010. Dixon was sentenced to life without parole on the aggravated murder charge; ten years on the aggravated robbery charge; and five years on the weapons under disability charge, to be served consecutively. Dixon was also sentenced to three years on the firearm specifications which the trial court ordered to be served prior and consecutive to the other three counts of the indictment.

### Exercise of Peremptory Challenge in Racially Discriminatory Manner

**{¶10}** Dixon raises three assignments of error, which we will address out of order for clarity of analysis, the second of which asserts:

**{¶11}** "The state violated the Equal Protection Clause of the Fourteenth Amendment when it exercised a peremptory challenge in a racially discriminatory manner."

**{¶12}** The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination in the exercise of a peremptory challenge to excuse a juror on account of his race. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). In *Batson,* the United States Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause. *Id.* at 96-98. First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. *Id.* at 96-97. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. *Id.* at 97-98. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Id.* at 98. An appellate court will not reverse the trial court's decision of no discrimination unless it is clearly erroneous. *See State v. Hernandez*, 63 Ohio St.3d 577, 583, 589 N.E.2d 1310, (1992).

**{¶13}** Dixon contends that Ms. McDuffie, an African American prospective juror,

was excused by the State using a peremptory challenge in a racially discriminatory manner. Dixon objected at trial, and while conceding that one African-American prospective juror had been excused for cause, trial counsel argued that McDuffie's departure left only one African-American juror on the panel. Counsel concluded by observing that he did not "see anything in her questionnaire, nor do I see anything in her questioning, that would cause the state to exercise a peremptory other than her race at this point."

{¶14} While the State concedes that Dixon satisfied the first step of demonstrating a prima facie case with respect to McDuffie, it contends that it did not racially discriminate against her. Rather, the State asserts it excused McDuffie, as well as Ms. O'Neill, a white prospective juror, for the same race-neutral reason. The State defended the peremptory strike as follows:

As for Ms. McDuffie, albeit her questionnaire doesn't give a lot of insight into her background, however, when I was questioning her, what I noticed in hers was the same thing I noticed in Ms. O'Neil who was the first juror that I excused, and that was a white individual. They both had that tendency to interrupt a lot.

Specifically, I know that when I was talking to Ms. McDuffie – excuse me, when I was talking to Mr. Johnson, who was sitting to her right, and I was asking him questions, she chimed in – on at least two different occasions she chimed in. And I said okay – at one point I said, okay, I guess I'm talking to you, too, and began talking to her. And what it showed me is that she wasn't letting other people talk. And if that's the type of juror that's going to be in the back, she's going to bully the room. She's not going to let other people express their opinions. I don't like that. I don't like people who don't give other people a chance to talk. I don't like people who constantly interrupt and constantly need that attention, who need to make themselves the center of attention. It was the same problem I had with Ms. O'Neill who I excused, and it's the problem that I had with her. I don't particularly like jurors like that. I think that they prevent other jurors from fulfilling

their duty and expressing their own opinion.  So it was for that reason that I sought to have her removed, and that's why I exercised my peremptory challenge on her.

**{¶15}** Dixon did not refer to any statements made by the State that would indicate that the challenge was discriminatory, did not point to a pattern of discrimination and did not point to specific questions in voir dire that would indicate a discriminatory motive.

**{¶16}** Denying the *Batson* objection, the trial court found:

[T]here is a remaining African American juror who has been, in effect, accepted by both sides.  The issue, then, is that of the juror in question who was removed.  I don't believe that the prosecution acted in any other – for any other reason other than what he stated on the record.  And I think that unless you personally were in her presence and watched her demeanor and manner, I think it would be fair to make the assessment that she may be a distraction as the prosecutor said.  I mean, I don't know that, but I think that is grounds.  His reasoning is reasonable and fair and meets the standard and test that would dictate and control that decision.

**{¶17}** The prosecutor gave a racially-neutral reason for using a peremptory challenge against McDuffie.  Admittedly, it is not a heavy burden for the State to meet to articulate a racially-neutral reason for using a peremptory strike.  However, the narrow standard of review was imposed upon intermediate appellate courts in *Batson* because assessment of the genuineness of a racially-neutral reason necessitates a multi-dimensional analysis by the trial court.  It is dependent upon credibility determinations the trial court must make of the prosecutor and the prosecutor's articulated assessment of the prospective juror's behavior during voir dire, which the trial court also has the benefit of observing.  A one-dimensional appellate record by necessity dictates review for clearly erroneous determinations that are not dependent upon credibility determinations.  As the trial court's finding that no purposeful discrimination occurred by striking prospective juror

McDuffie was not clearly erroneous, Dixon's second assignment of error is meritless.

### Admission of Witness's Prior Conviction

**{¶18}** In his third assignment of error, Dixon asserts:

**{¶19}** "The trial court erred when it did not allow Appellant Dixon to introduce per Evid.R. 609(A)(3) the State's witness's prior conviction for obstruction of official business under Evid.R. 609(A)(3)."

**{¶20}** Evid.R. 609 provides in relevant part:

(A) General Rule. For the purpose of attacking the credibility of a witness:
***
(3) Notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance.

**{¶21}** The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. Unless the trial court has abused its discretion and the appellant has been materially prejudiced by the exclusion, an appellate court should be slow to interfere. *State v. Hymore*, 9 Ohio St.2d 122, 130, 224 N.E.2d 126 (1967). Abuse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough. See, *Bergman v. Bergmann,* 2d Dist. No. 25378, 2013-Ohio-715, ¶9; *Hall-Davis v. Honeywell, Inc.,* 2d Dist. Nos. 2008 CA 1, 2008 CA 2, 2009-Ohio-531, ¶35.

**{¶22}** Having preserved the error for review via a proffer, Dixon argues that Evid.R. 609 allowed him to cross-examine Erika Hallman, the State's witness, about her prior misdemeanor conviction for obstruction of official business; a crime which he contends involves dishonesty or false statement. The State counters that the trial court is afforded wide discretion in admitting and excluding evidence, and that the trial court's

ruling to not permit defense counsel to cross examine Hallman was correct because the offense of obstruction of official business does not necessarily involve dishonesty or making false statements.

**{¶23}** It is undisputed that Hallman had been indicted for theft, falsification, and tampering with records for receiving welfare overpayments from the Mahoning County Job and Family Services. She ultimately pled guilty to obstructing official business, which is defined as: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." R.C. 2921.31.

**{¶24}** As both parties have acknowledged within their briefs, the Ninth District has addressed the issue in *State v. Evans*, 9th Dist. No. 07CA0057-M, 2008-Ohio-4772. In *Evans*, the defendant was convicted of one count of kidnapping, two counts of rape, and one count of felonious assault. *Id.* at ¶2. The victim-witness was convicted of obstruction of official business for lying to the police. Pursuant to Evid.R. 609, the trial court did not permit cross examination of the victim-witness about her conviction for obstruction of official business, nor allow a police officer to testify about the facts surrounding said conviction. *Id.* at ¶7-10. The trial court reasoned that the application of Evid. R. 609 was limited to cases in which the conviction itself includes the element of dishonesty or making a false statement. The Ninth District agreed that that the crime of obstruction of official business does not include deceit, dishonesty or false statement as an element to permit admissibility under Evid.R. 609(A)(3) or (B).

**{¶25}** This rationale is persuasive. Here, Hallman was ultimately convicted of obstruction of official business. There are many fact patterns which could support a conviction for this offense that do not involve deceit, dishonesty or false statement, potentially including the present one involving Hallman. To inquire into the facts behind Hallman's conviction could conceivably require a trial within a trial; serving to confuse or mislead the jury. Thus, it was not an abuse of the trial court's discretion to limit the same. Accordingly, Dixon's third assignment of error is meritless.

**Allied Offenses of Similar Import and Merger**

{¶26} In his first and final assignments of error, Dixon asserts:

{¶27} "The trial court erred when it sentenced Appellant Dixon on two allied offenses of similar import, committed at the same time and with the same animus, in violation of R.C. 2941.25 and the Double Jeopardy clause of the Fifth Amendment."

{¶28} Dixon argues that the offenses of aggravated murder and aggravated robbery were allied offenses of similar import subject to merger. Although Dixon did not seek merger of these counts prior to this appeal, the Supreme Court of Ohio has repeatedly held "that the imposition of multiple sentences for allied offenses of similar import is plain error." *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶31, citing *State v. Yarborough,* 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E. 2d 845, ¶96-102. Merger of allied offenses is a question of law, *State v. Taylor,* 7th Dist. No. 07 MA 115, 2009-Ohio-3334, ¶19, and is thus subject to de novo review. *State v. Ryan,* 7th Dist. No. 10-MA-173, 2012-Ohio-1265, ¶44.

{¶29} R.C. 2903.01(B) defines aggravated murder as "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit * * * kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, terrorism, or escape." R.C. 2911.01 defines aggravated robbery as "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall [h]ave a deadly weapon on or about the offender's person."

{¶30} Under R.C. 2941.25, Ohio's multiple-count statute, a trial court may convict and sentence a defendant for two or more offenses having as their genesis the same criminal conduct or transaction, if the offenses (1) were not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense. *State v. Bickerstaff*, 10 Ohio St. 3d 62, 66, 461 N.E.2d 892 (1984), quoting *State v. Moss*, 69 Ohio St.2d 515, 519, 433 N.E.2d 181 (1982). The constitutional protection against double jeopardy does not preclude a defendant from being separately punished for an aggravated murder and for felonies involved in that

murder.  *State v Coley*, 93 Ohio St.3d 253, 264, 754 N.E.2d 1129 (2001).

**{¶31}**  Prior to *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, it was well settled that aggravated felony murder was not an allied offense of similar import to the underlying charged felony, *State v. Keene*, 1998-Ohio-342, 81 Ohio St. 3d 646, 668, 693 N.E.2d 246, 265 (1998), and specifically, aggravated murder and aggravated robbery, for merger purposes.  *Bickerstaff* at 66*.* However, this no longer applies in light of the Ohio Supreme Court decision in *Johnson*.  "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered."  *Johnson,* at syllabus, overruling *State v. Rance,* 85 Ohio St.3d 632, 710 N.E.2d 699 (1999), to the extent *Rance* analyzed multiple offenses "solely in the abstract" for merger purposes.  *Johnson* at ¶ 44.

> Thus, the test applied in *Johnson* is: 1) can the two offenses be committed by the same conduct; and if so, 2) looking at the facts of the case, were the two offenses committed by the same conduct as a single act with a single state of mind. *Id.* If the answer to both questions is yes, then they are allied offenses of similar import and must be merged. If the acts were committed separately or with a separate animus, they are not allied offenses. *Id.* at ¶ 51, 942 N.E.2d 1061.

> *Johnson* recognized that, due to the subjective nature of the analysis based on the facts of each case, some crimes may be allied offenses in certain cases, but not in another case under a different set of facts. *Id.* at ¶ 52, 942 N.E.2d 1061.

*State v. Helms*, 7th Dist. No. 2012-Ohio-1147, ¶24-25.

**{¶32}**  Reviewing Dixon's conduct during the events giving rise to the charged offenses, his convictions for aggravated murder and aggravated robbery are not subject to merger pursuant to R.C. 2941.25(B).  Despite the close temporal connection, the two offenses were committed separately and with a separate animus.  The aggravated

robbery was completed when Dixon enlisted accomplices, entered the Auto Zone with a mask over his face and gun in hand with the intent to take money from the business. The murder of Agee was completely unnecessary to complete the crime of aggravated robbery. The facts supporting the aggravated murder charge are separate from those supporting the aggravated robbery conviction; Dixon approached the struggle between Jackson and Agee, raised his gun and shot Agee. These are separate actions which are evidence of the specific purpose to kill to support an aggravated murder conviction, independent of the aggravated robbery offense. As such these crimes had a separate animus and conduct. Accordingly, Dixon's first assignment of error is meritless.

{¶33} All of Dixon's arguments are meritless. First, the trial court's finding that no purposeful discrimination occurred by striking a prospective African-American juror was not clearly erroneous. Second, the trial court did not abuse its discretion by refusing to admit testimony pertaining to a prior conviction for obstruction of official business as that offense does not necessarily rely upon dishonesty or a false statement as contemplated by Evid.R. 609. Finally, the offenses of aggravated murder and aggravated robbery are not allied offenses of similar import, nor were they committed with the same animus, and as such were correctly not merged at sentencing. Accordingly, the judgment of the trial court is affirmed.

Vukovich, J., concurs.

Waite, J., concurs.