[Cite as *State v. Hough*, 2024-Ohio-5190.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

BRIAN D. HOUGH,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 CO 0004**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2022 CR 152

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito J. Abruzzino*, Columbiana County Prosecutor and *Atty. Tammie M. Jones,* Assistant Prosecutor, for Plaintiff-Appellee

*Atty. Donald K. Pond,* for Defendant-Appellant

Dated: October 25, 2024

**WAITE, J.**

{¶1} Appellant Brian D. Hough appeals the trial court's decision overruling his post-sentence motion to withdraw his guilty plea to counts of illegal use of a minor or impaired person in nudity-oriented material or performance, importuning, attempted unlawful sexual conduct with a minor, and other charges. Appellant argues that he has medical conditions that caused him to be in such pain when he entered his guilty plea that his plea was not voluntarily made. Although the record reflects that Appellant was sporadically suffering from pain and discomfort during the change of plea hearing, it is also clear that Appellant was given many opportunities to take breaks, or even to continue the hearing, and he declined. Appellant insisted each time that he wanted to complete the change of plea hearing. The judge asked him several times whether he was entering his plea voluntarily, and Appellant agreed each time that he was. There is nothing in this record to suggest a manifest injustice occurred in the trial court's decision to overrule the post-sentence motion to withdraw Appellant's guilty plea, and the judgment of the trial court is affirmed.

<u>Facts and Procedural History</u>

{¶2} Appellant was indicted on 80 counts in the Columbiana County Court of Common Pleas for importuning, R.C. 2907.07(D)(2) (fifth degree felony, one count); attempted unlawful sexual conduct with a minor, R.C. 2907.04(A) (fourth degree felony, one count); possessing criminal tools, R.C. 2923.24(A) (fourth degree felony, one count); pandering obscenity involving a minor or impaired person, R.C. 2907.321(A)(5) (fourth degree felony, 10 counts); and illegal use of a minor or impaired person in nudity-oriented material or performance, R.C. 2907.323(A)(3) (fifth degree felony, 67 counts).

<u>Case No. 24 CO 0004</u>

{¶3} The charges arose from an investigation into the pornography downloaded from the internet onto Appellant's home computer. Police discovered tens of thousands of images of child pornography on Appellant's computer, digital storage devices, and his cell phone. Appellant admitted that he downloaded, saved, and catalogued the images. Appellant also admitted that he communicated with a Salem Police Detective whom Appellant believed to be a 14-year-old boy, and Appellant intended to meet this "boy" in order to engage in sexual activity with him.

{¶4} Appellant pleaded not guilty to the charges at his arraignment on June 2, 2022, and filed a motion to reduce his $100,000 bond. The reason given for this motion was primarily that Appellant suffered from multiple longstanding medical conditions that would be difficult to treat if he remained incarcerated prior to trial. The court reduced his bond to $25,000 on July 12, 2022, and Appellant was released on bond on July 19, 2022. Appellant later violated the terms of the bond, and was again arrested. The terms of his bond were then modified, and he was placed on electronic home monitoring.

{¶5} On March 16, 2023, Appellant filed a motion seeking a competency evaluation, which was denied. Appellant waived jury trial, and a bench trial began on April 3, 2023. The prosecutor was well into its examination of its first witness, Detective Brad Davis of the Salem Police Department, when a recess was called. After an extended break in the trial, the parties informed the court that Appellant now intended to enter a guilty plea to 79 of the 80 counts.

{¶6} The trial court then turned the bench trial into a change of plea hearing. During the break, Appellant's counsel had discussed a variety of forms with Appellant, including a "defendant's response to court," and a "judicial advice to defendant," form.

Those forms were signed and entered into the record. Appellant informed the court that he wanted to plead guilty to count 1 and counts 3-80 of the indictment. There was no felony plea agreement signed by the parties, but the state did consent to dismissing count two of the indictment. After a lengthy plea colloquy, the court accepted Appellant's guilty plea and set sentencing for June 5, 2023. At sentencing, Appellant, himself, presented to the court the details of his many crimes, but showed no remorse and insisted he did nothing wrong. The court imposed an aggregate term of four-hundred-ninety-four months of imprisonment, or forty-one years and two months. The court designated Appellant a Tier II Sex Offender. The final judgment of conviction and sentence was filed on June 5, 2023.

{¶7} On June 13, 2023, Appellant filed a motion seeking to withdraw his guilty plea. The state opposed the motion on August 25, 2023. A hearing on the motion was held on November 16, 2023 and the court overruled it on December 15, 2023. Appellant filed this appeal on January 16, 2024.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY OVERRULING DEFENDANT-APPELLANT BRIAN HOUGH'S POST-SENTENCE MOTION TO WITHDRAW HIS GUILTY PLEAS.

{¶8} Appellant believes the trial court should have granted his post-sentence motion to withdraw his guilty plea. "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to

withdraw his or her plea." Crim.R. 32.1. A "manifest injustice" is a "clear or openly unjust act" relating to a fundamental flaw in the plea proceedings which results in a miscarriage of justice. *State v. Straley*, 2019-Ohio-5206, ¶ 14. Appellant contends that a manifest injustice occurred in this matter, as he alleges he only entered his guilty plea because he was in extreme pain during his trial, as well as the change of plea hearing. He contends that his plea was not voluntary, but was "coerced" because of the pain he suffered during the change of plea hearing.

**{¶9}** "[A] defendant seeking to withdraw a plea of guilty after sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 264 (1977). A post-sentence plea withdrawal motion is warranted "only in extraordinary cases." *Id.* The defendant must show withdrawal is "necessary" to correct manifest injustice. *State v. Stumpf*, 32 Ohio St.3d 95, 104 (1987).

**{¶10}** "The Supreme Court has held that if the record demonstrates compliance with Crim.R. 11, the defendant's own self-serving declarations or affidavits alleging a coerced guilty plea are insufficient to rebut the record on review which shows that his plea was voluntary." *State v. Reed*, 2005-Ohio-2925, ¶ 16 (7th Dist.), citing *State v. Kapper*, 5 Ohio St.3d 36, 38 (1983).

**{¶11}** An appellate court reviews the disposition of a motion to withdraw a guilty plea for an abuse of discretion. *State v. Carabello*, 17 Ohio St.3d 66, 67 (1985). "Abuse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *State v. Dixon*, 2013-Ohio-2951, ¶ 21 (7th Dist.).

Case No. 24 CO 0004

{¶12} There is no question that a court cannot accept a plea unless it is made knowingly, intelligently and voluntarily. Crim.R. 11(C); *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). In Appellant's argument, though, he appears to draw the conclusion that the very fact that he suffers from painful medical conditions establishes that he did not voluntarily enter his guilty plea. This is an unusual argument for Appellant to make, because he is well aware that having a painful medical condition is not proof, in and of itself, that a plea was made involuntarily. Appellant cites to one case that makes this very point: "While advice or pressure by external influences, or the absence thereof, may be '. . . probative of an accused's motivation for pleading guilty, it does not necessarily show coercion, duress, or involuntariness.' " *State v. White*, 2004-Ohio-6474, ¶ 48 (11th Dist.), quoting *United States v. Pellerito*, 878 F.2d 1535, 1541 (1st Cir. 1989).

{¶13} Appellant testified at his change of plea hearing that he was under the influence of various medications, including morphine, and that those medications made his "brain a little fuzzy" at times. He also made it clear, though, that at no time did his medications prevent him from understanding the plea he was entering. (4/3/23 Tr., p. 132.) He stated that he was properly taking all of his prescribed medications. He stated that prior to entering his plea his attorney had answered all of his questions. (4/3/23 Tr., p. 133.) Appellant did say that "sitting here is terrible because I cannot get situated correctly." (4/3/23 Tr., p. 134.) The judge then responded to Appellant that he could take a break if needed, but Appellant refused, saying that he did not want to take a break. (4/3/23 Tr., p. 134.)

{¶14} The judge was aware that Appellant was in some discomfort, but Appellant answered multiple times that he wanted to proceed with the hearing to change his plea,

and that he was doing so voluntarily. (4/3/23 Tr., p. 137.) Appellant acknowledged that the court was very accommodating regarding his pain, and had offered several breaks during the hearing, all of which were refused. Appellant stated that he read and voluntarily signed the "Judicial Advice to Appellant" form that reviewed the charges, the potential penalties, and the rights he was waiving by pleading guilty. (4/3/23 Tr., p. 138.) The judge repeatedly asked Appellant if he had any questions, and Appellant answered "no" each time.

{¶15} The court reviewed each count in the indictment and Appellant stated that he understood the charges. The court discussed the possible penalties, and Appellant stated that he understood them. The court reviewed all the rights that were being waived by pleading guilty. The court asked Appellant if he was satisfied with the representation given by his counsel, and he said "yes." This process was lengthy and takes up many pages of the transcript. There was no indication on the record that Appellant was in unusual pain, or that he could not properly continue with the hearing. (4/3/23 Tr., pp. 138-156.) The court also asked Appellant if he needed to take a break before the actual guilty pleas were entered on each count. Again, Appellant said "no." (4/3/23 Tr., p. 157.) The court asked Appellant if he wanted to plead guilty to each count, and Appellant answered "yes" each time. (4/3/23 Tr., pp. 157-164.) Yet again, the court asked Appellant if he was entering the plea voluntarily and of his own free will, and Appellant answered "Yeah." (4/3/23 Tr., p. 164.) Once again, there is no indication in the record that Appellant was in severe pain or that he could not, or should not, proceed with his plea during the part of the hearing where he actually entered his guilty plea to each count.

Case No. 24 CO 0004

{¶16} After the guilty pleas were entered, the court began explaining to Appellant what would occur next in the process, such as the preparation of a presentence investigation report. The court told Appellant that at sentencing, he was allowed to give a statement, and explained the sentencing process, generally. At no point in this part of the hearing did Appellant express that he was in pain or needed to take a break. The court asked Appellant if he had further questions, and Appellant said "no." The hearing then adjourned.

{¶17} It is apparent from the record and Appellant's stated history that he was likely in some type of pain at various points during the change of plea hearing, but he insisted on entering his guilty plea every time he was asked, and he was given many opportunities to either take a break or stop the process, which he refused each time. Appellant also was very clear that, while he was taking many medications, those medications did not prevent him from understanding the process and voluntarily entering a guilty plea. Other than having problems finding a comfortable seating position, Appellant did not express to the judge the exact nature of his pain, and he never once indicated that his pain was so great that he could not go forward with the hearing. There is nothing in the record that would have alerted the judge that Appellant was in great distress, as he seemed perfectly cogent, and the fact that Appellant did not once accept the judge's offer to take a break signals that the discomfort was not so serious as to prevent Appellant from fully participating in the process.

{¶18} Appellant points out that in the April 3, 2023 "defendant's response to the court" he answered "yes" to question number 11: "Has anybody or anything forced you to

plead guilty?" He explained his answer by writing: "pain I am going through." Appellant contends that his answer to this question shows that he did not enter his plea voluntarily.

{¶19} A questionnaire such as a "defendant's response to court" provides information for the trial judge to use at the change of plea hearing. It is not necessarily the final word on any subject matter contained in the questionnaire, because the judge can, and usually does, discuss all the questions and answers in this type of document at the change of plea hearing. There are 19 questions on the "defendant's response to the court" form, and the trial judge appears to have reviewed all of them at Appellant's change of plea hearing.

{¶20} If the judge had failed to address Appellant's answer to question number 11, then we might be conducting a different analysis. For example, in our recent case of *State v. Boyer*, 2024-Ohio-1319, we determined that an unresolved contradiction between the defendant's "Written Responses to the Court" and statements made by the trial judge in the judgment entry required that the guilty plea be vacated. In that case, similar to the current matter, the defendant answered "yes" to the question "has anybody or anything forced you to plead guilty." *Id.* at ¶ 19. However, in *Boyer* the defendant's problematic answer was never addressed at the plea colloquy, and in fact, the trial court misstated the defendant's answer at the change of plea hearing and in the judgment entry.

{¶21} The trial judge in this matter did address the issue of Appellant's pain and discomfort, many times. The judge asked Appellant multiple times if he wanted to change his plea and if he was changing his plea voluntarily, even though he was in physical discomfort. (4/3/23 Tr., pp. 136-137.) The judge asked Appellant many times if he wanted to take a break, and each time Appellant was adamant that he wanted to carry on with

the hearing. The judge reviewed the medications that Appellant was taking and made sure that, despite these medications, Appellant had a complete understanding of every aspect of the proceeding. The judge asked Appellant, as one of the final questions in the change of plea hearing, whether he was entering the plea voluntarily and of his own free will, and Appellant answered "Yeah." (4/3/23 Tr. p. 164.) We must also note this record reflects that Appellant was no stranger to the criminal justice system, and had a prior conviction for contributing to the delinquency of a minor.

**{¶22}** In order for Appellant to prevail in his argument, a manifest injustice must, at minimum, be actually identifiable in the record. In other words, the record must contain some indication of what the manifest injustice is. This record shows that the judge carefully went through all the required aspects of the change of plea hearing and that Appellant's physical and mental well-being were at the forefront of the court's considerations throughout the process. It is apparent from this record that, despite Appellant claiming he was in pain or discomfort at various times during the hearing, he understood the proceedings and the charges, and voluntarily entered his plea.

**{¶23}** Also, as Appellee correctly states, there was a period of more than two months between Appellant's change of plea hearing and his motion to withdraw the plea, during which Appellant could have raised his contention that his pain induced his guilty plea involuntarily. The timing of the filing of a motion to withdraw a plea can indicate whether the motion is based simply on a change of heart about entering the plea. *State v. Meyers*, 2024-Ohio-1321, ¶ 25 (7th Dist.). A mere change of heart is not a sufficient basis for withdrawing a guilty plea. *State v. Kinney*, 2023-Ohio-2549, ¶ 31 (7th Dist.). It appears from the record Appellant may have entered his plea to simply "test the waters"

Case No. 24 CO 0004

as to his possible sentence. If it is clear from the record that a defendant is entering a plea to find out how harsh the sentence will be, a subsequent motion to withdraw the plea will nearly always be overruled; the defendant obviously had a mere change of heart. *Id.* at ¶ 26. There was no plea agreement in this case, so it is very possible that Appellant wanted to quickly stop the bench trial and enter a guilty plea hoping for a lighter sentence. Instead, a very lengthy sentence of over 41 years was ordered. As the record shows Appellant expressed the belief he was doing nothing wrong, he apparently expected a light sentence. As he, instead, received a 41-year sentence, there is a strong indication that his motion to withdraw the plea was entered due to a change of heart based on the prison term that was imposed.

{¶24} Appellant provided conflicting reasons at the sentencing hearing about why he stopped the trial and entered a guilty plea. He claimed that one of the most important reasons was in order to have the chance to tell the court his side of the story, which presumably he could not do at trial. He also said he was tired of the trial dragging on so long, and that he wanted the entire process to be over as quickly as possible because of his medical issues. Appellant admitted that he catalogued pornographic photos, that he had been talking to "some young kids," and that he was guilty of the charges against him. (6/5/23 Tr., p. 187.) On the other hand, he showed no remorse for what he had done, did not think he did anything wrong (directly contradicting his statement that he was guilty), and said that he pleaded guilty because he thought there was nothing else he could do based on the evidence found on his computer and other devices. Appellant stated at sentencing that "[d]uring the trial, I really can say honestly that I just wanted it to be over." (6/5/23 Tr., p. 184.) He told the court that he was in pain, and that his pain

medication only helped with the pain but did not take it completely away. It is apparent, however, that any pain he experienced did not prevent him from making a very long, meandering, and excuse-filled allocution at sentencing, contained in 19 pages of transcript. (6/5/23 Tr., pp. 183-202.) And again, Appellant did not ask to withdraw his guilty plea at, or before, sentencing.

{¶25} There is no question that the trial judge was aware of Appellant's medical issues before trial, during trial, and at the change of plea hearing. The judge was obviously sympathetic regarding Appellant's medical problems and the discomfort he was in. This is evident in the court's leniency regarding bail, especially after Appellant had violated the terms of his bail. The trial court initially set a $100,000 bond, but reduced it so that Appellant could be released from custody pending trial. When Appellant violated, the court again modified the terms of the bond and continued to allow Appellant to remain free, under home confinement.

{¶26} Clearly, no manifest injustice occurred in this case. It was Appellant who was determined to enter a guilty plea, and asked to do so immediately. This plea was not initiated by the court or the prosecutor. The court gave Appellant many opportunities to delay the proceedings and for Appellant to change his mind about entering a plea, but Appellant insisted on proceeding with the change of plea hearing. There is absolutely no indication in this record that Appellant was not thinking clearly and/or did not understand the choices he was making. The judge made every effort to explain the proceedings, and gave him every opportunity to be as comfortable as possible during the proceedings. Based on this record, there was no abuse of discretion or manifest injustice in overruling

Appellant's post-sentence motion to withdraw his guilty plea. Appellant's single assignment of error is overruled.

## Conclusion

**{¶27}** Appellant contends that the trial court should have granted his post-sentence motion to withdraw his guilty plea. We review the trial court's judgment to determine whether a manifest injustice occurred. Appellant argues that he was in so much pain when he entered his guilty plea that it was not voluntarily made. While Appellant likely was having some pain during at least some of the change of plea hearing, the court took this into account and made every accommodation for Appellant during the hearing. The record indicates that it was Appellant who insisted on completing the change of plea hearing, and there is no indication that his medications or medical condition rendered his plea involuntary. There is nothing in the record that reveals that a manifest injustice occurred by overruling the motion to withdraw the guilty plea, and the judgment of the trial court is affirmed.

Robb, P.J. concurs.

Hanni, J. concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**