[Cite as *State v. Haslam*, 2024-Ohio-6073.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JOSHUA DALE HASLAM,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 BE 0019

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 22 CR 235

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor, and *Atty. Jacob A. Manning*, Assistant Prosecutor, for Plaintiff-Appellee

*Atty. Aaron M. Meikle*, for Defendant-Appellant

Dated:  December 19, 2024

---

**WAITE, J.**

**{¶1}** Appellant Joshua Dale Haslam appeals his conviction for possession of fentanyl and aggravated trafficking in methamphetamine. Appellant argues on appeal that improper "other acts" evidence was introduced at his jury trial. Appellant believes that testimony about a traffic stop in which narcotics were found in his vehicle should not have been admitted at trial. The record reflects that the disputed testimony was offered in rebuttal to cross-examination testimony. The record also shows the testimony was admitted for various permissible reasons, pursuant to Evid.R. 404(B)(2). Appellant's assignment of error is not persuasive, and the judgment of the trial court is affirmed.

Facts and Procedural History

**{¶2}** In the spring of 2022, Detective Mike Russell of the Monroe County Sheriff's Department was conducting an investigation of Appellant for drug trafficking. Det. Russell obtained a search warrant to place a GPS tracker on Appellant's vehicle, a 2013 Toyota Scion, and began tracking the car on April 29, 2022. The vehicle was tracked to a variety of locations known for illegal drug activity in Belmont County, Monroe County, and Columbus, Ohio. Det. Russell used a confidential informant to obtain information that Appellant was buying and distributing drugs in Woodsfield, Columbus, and Barnesville. Det. Russell shared this information with law enforcement officials in Barnesville. He determined that Appellant's vehicle often stopped at a location on Leggett Avenue in Barnesville. Det. Russell was also aware that Appellant was a frequent occupant or was living at 121 Brill Street in Barnesville, the home of someone known as Chippy, later identified as Chad Anderson. Barnesville police also observed Appellant's vehicle at the Brill Street address at various times in April and May of 2022.

**{¶3}** Officer Edward Kubat ("Kubat") of the Barnesville Police Department began working with Det. Russell to investigate Appellant's drug activity. In May of 2022, Officer Kubat obtained a warrant to search 121 Brill Street for illegal narcotics. Det. Russell informed Officer Kubat on May 11, 2022, that Appellant had proceeded to Columbus to purchase drugs and then traveled immediately to Barnesville and stopped near 121 Brill Street. Officer Kubat and other officers executed the search warrant on May 12, 2022, at 2:54 p.m. Appellant's vehicle was at the 121 Brill Street address when the search was conducted.

**{¶4}** The officers found two people in the house, Appellant and Ms. Jaran Whittington. The two occupants were removed from the house and the search continued. Officers found substances that appeared to be illegal drugs. The drugs were found in the laundry room, close to where the officers found Appellant, and were later confirmed to be approximately 60 grams of fentanyl and 29 grams of methamphetamine. The officers also found many syringes, some of them filled. One filled syringe was seen near Appellant, and his arm was bleeding when the officers found him. The officers also found scales, weights for scales, tiny plastic bags used for drugs, and a large amount of drug paraphernalia. They found a safe that contained Appellant's wallet. The safe also contained one bag of fentanyl and three bags of methamphetamine. Appellant's car keys were near the safe, next to some of the fentanyl. Appellant's personal belongings were also found in the house.

**{¶5}** On October 6, 2022, Appellant was indicted by the Belmont County Grand Jury on four counts: aggravated trafficking in fentanyl, possession of fentanyl, aggravated trafficking in methamphetamine, and possession of methamphetamine.

**{¶6}** On February 2, 2023, the grand jury entered a superseding indictment. Appellant was indicted on aggravated trafficking in fentanyl in violation of R.C. 2925.03(A)(2), a first degree felony; possession of fentanyl pursuant to R.C. 2925.11(A), a first degree felony; and aggravated trafficking in methamphetamine in violation of R.C. 2925.03(A)(2), a second degree felony.

**{¶7}** The case went to a jury trial on April 26, 2024. The state called Det. Russell and Officer Kubat, along with Lydia Lee of the Ohio Bureau of Criminal Investigation, Chief Rocky Sirianni, Lieutenant Matthew Tippie and Officer Cody Daugherty of the Barnesville Police Department, the confidential informant, and Lieutenant Zane Love of Woodsfield Police Department. Appellant had no witnesses.

**{¶8}** During the cross-examination of Det. Russell, Appellant's counsel asked the detective how many times he had pulled over Appellant's vehicle. He answered that it was just under a dozen times. (4/26/24 Trial Tr., p. 210; hereinafter referred to as "Tr."). Counsel asked: "Out of all of those stops, how many times did you find [Appellant] to have in possession narcotics?" (Tr., p. 210.) Det. Russell responded: "I don't recall ever finding them." (Tr., p. 211.)

**{¶9}** Lieutenant Love was one of the last witnesses to testify. The primary purpose of Lt. Love's testimony was to describe a traffic stop of Appellant while Appellant was driving his 2013 Toyota Scion on February 14, 2022. The stop occurred in Woodsfield. During the stop, Appellant fought with Lt. Love and another officer over a bag of narcotics containing fentanyl and methamphetamine that Appellant had in his lap. Appellant was then tasered and arrested. (Tr., p. 494.)

Case No. 24 BE 0019

**{¶10}** The jury convicted Appellant of counts two and three, along with a forfeiture specification. Sentencing was held on May 13, 2024. Appellant was sentenced to eleven years in prison for possession of fentanyl and seven years for aggravated trafficking in methamphetamine, to be served consecutively. These were indefinite sentences, for a total sentence of eighteen to twenty-three-and-a-half years in prison. The sentencing entry was filed on May 15, 2024. This timely appeal followed on June 4, 2024. Appellant raises one assignment of error.

ASSIGNMENT OF ERROR

THE TRIAL COURT IMPROPERLY ADMITTED OTHER-ACTS EVIDENCE THAT UNFAIRLY PREJUDICED MR. HASLAM AND DENIED HIM OF HIS RIGHT TO A FAIR TRIAL.

**{¶11}** Appellant contends that the court should not have allowed Lieutenant Love of the Woodsfield Police Department to testify about the February 14, 2022 traffic stop. The crime in this case occurred on May 12, 2022, in Barnesville, and did not involve a traffic stop. According to Appellant, the drugs found during the traffic stop on February 14, 2022, in Woodsfield had no relation to the drugs found on May 12, 2022. Although both incidents involved fentanyl and methamphetamine, Appellant urges this is mere coincidence. He contends that as the drugs at issue in this case were found at the residence of Chad Anderson, Anderson should have been the primary suspect. While Appellant was at the residence when the search warrant was executed, he did not own or rent the house. Appellant contends that it was not reasonable to conclude the drugs

belonged to him, and he posits that the testimony of Lt. Love unduly prejudiced the jury into convicting him.

**{¶12}** Appellant claims that Lt. Love's testimony consisted of impermissible "other acts" evidence, prohibited by Crim.R. 404(B). Appellant argues that this evidence was presented to show his bad character: that he had a propensity for being a drug dealer and transporting drugs in his car. Appellant claims Lt. Love's testimony did not qualify under any of the exceptions listed in Evid.R. 404(B)(2). Appellant also argues that the evidence from February 14, 2022, was irrelevant to the crimes charged in this case, which occurred on May 12, 2022. Appellant concludes that the trial court abused its discretion in allowing Lt. Love to testify, and that the convictions should be reversed and a new trial ordered.

**{¶13}** Appellee responds that Lt. Love's testimony was a permissible use of other acts evidence because it showed that: (1) Appellant had knowledge of drug trafficking; (2) he used his vehicle in drug trafficking; (3) he had intent to traffic in drugs; and (4) it identified Appellant as the person who transported drugs in his vehicle to 121 Brill Street in Barnesville, and therefore, proved ownership of the drugs. Appellee also argues that Lt. Love's testimony helps establish a plan of operation by Appellant, as both the February 14, 2022 and May 12, 2022 incidents involved Appellant being found with fentanyl and methamphetamine, and his vehicle was involved in both incidents.

**{¶14}** Appellee further argues that Appellant opened the door to Lt. Love's testimony, by cross-examining Det. Mike Russell as to various traffic stops of Appellant in which no drugs were found. Appellee explains that Lt. Love's testimony was in direct

contradiction of the impression given during the cross-examination of Det. Russell that Appellant had never been found with drugs in his vehicle.

**{¶15}** The issue in this appeal is a purely evidentiary matter. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court". *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. Evidentiary decisions are reviewed for an abuse of discretion. *State v. Morris*, 2012-Ohio-2407, ¶ 14. "Abuse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *State v. Dixon*, 2013-Ohio-2951, ¶ 21 (7th Dist.).

**{¶16}** Evid.R. 404 generally prohibits the introduction of character evidence at trial to prove that a person acted in conformity with a bad character trait. *State v. Williams*, 2012-Ohio-5695, ¶ 15. Evid.R. 404(B) more specifically prohibits the use of "other acts" evidence (also called "other bad acts," "bad acts" or "bad character") to prove that a person had a propensity to act in a certain bad way: "Evidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Evid.R. 404(B)(2), though, provides a number of permissible uses for evidence of other crimes, wrongs, or acts: "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." This list is illustrative and non-exhaustive. *State v. Schmidt*, 2022-Ohio-4138, ¶ 29 (12th Dist.).

**{¶17}** Whether other acts evidence can be admitted is governed by a three-step test:

Case No. 24 BE 0019

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R 403.

*State v. Williams*, 2012-Ohio-5695, ¶ 20.

**{¶18}** It is clear from this record that Love's testimony was admissible. First, Appellant's defense in this case was that the drug evidence found at 121 Brill Street did not belong to him. According to Appellant, it was just a coincidence that he was there when the warrant was executed. The house was not rented in Appellant's name, but was rented in the name of Chad Anderson. Although Appellant was found in the house when it was searched, he insists that the drugs were not his. The drugs could have belonged to Chad Anderson or to the other person found at the house on May 12, 2022, Ms. Jaran Whittington. Appellant's theory at trial was that it was unreasonable to conclude that he owned the drugs found in the house.

**{¶19}** This line of defense was made clear in his counsel's opening statement and in a statement made to the trial judge in a sidebar. (Tr., pp. 8, 164-165.) His counsel told the court he did not intend to make the character argument that Appellant was not the

type of person to be around drugs or traffic in drugs. (Tr., p. 8.) Counsel intended to argue that the state could not prove the drugs belonged to Appellant. Counsel stated: "The defense is, quite simply put, that these are not his drugs. And if I step outside of that, that's -- he can bring in any rebuttal witness he wants at that point." (Tr., p. 8.) Appellant hoped the jury would conclude that the drugs belonged to Chad Anderson.

{¶20} During the course of the trial, though, Appellant made character an issue. Appellant's counsel cross-examined Det. Russell. Det. Russell stated that he stopped Appellant in his vehicle just under a dozen times, and that he could not recall ever having found narcotics during the stops. (Tr., pp. 210-211.) The clear impression intended by Appellant's counsel was that Appellant was not the type of person to transport narcotics in his vehicle and had never been caught with drugs in his car.

{¶21} One of the last witnesses the state called was Lieutenant Zane Love of the Woodsfield Police Department. The court gave the jury an instruction that his testimony was purely to rebut the inference that Appellant had not ever been found with narcotics in his vehicle. Lt. Love was called to testify about an encounter he had with Appellant on February 14, 2022, in Monroe County. Lt. Love began following Appellant based on a dispatch call reporting a reckless driver. He followed Appellant's car to 335 South Main Street in Woodsfield. Lt. Love observed the vehicle for two hours, but observed no activity, so he eventually left, but then he received a report of a person passed out in the vehicle. Lt. Love returned to 335 South Main Street. He found Appellant passed out in the driver's seat with bags filled with white substances on his lap. No one else was in the vehicle. The vehicle was Appellant's 2013 Toyota Scion.

**{¶22}** Lt. Love testified that he took the bags of powder and put them on the hood of the car. He then had Appellant stand outside the car with his hands on the roof. Appellant grabbed one of the bags. The bag ripped and the contents spilled to the ground. Another officer arrived. There was a scuffle between Appellant and the officers. The other officer used a taser to subdue Appellant and he was arrested. It was ultimately determined that the substance in the bags was 1.27 grams of fentanyl, 5.68 grams of methamphetamine, and a non-narcotic powder. (Tr., pp. 490-495.)

**{¶23}** Lt. Love's testimony was in direct rebuttal to the evidence elicited by Appellant's counsel from Det. Russell. It is clear from the record that Appellant opened the door to this rebuttal evidence. Even if Lt. Love's testimony can be interpreted as character evidence, a prosecutor may present such evidence in rebuttal if the defendant "opens the door" by introducing evidence of good character or conformity to prior good behavior. *State v. Howton*, 2017-Ohio-4349, ¶ 32 (3d Dist.). "Only after the accused has introduced such evidence and thereby put his good character in issue may the prosecution then offer in rebuttal evidence attacking the character of the accused." *State v. Grubb*, 111 Ohio App.3d 277, 280-281 (2d Dist. 1996).

**{¶24}** Appellee also correctly states that there were other permissible reasons for Lt. Love's testimony. The state used Lt. Love to support the other evidence establishing that Appellant used the same car to visit various drug activity locations. At least one of the locations was in Woodsfield, and the stop that Lt. Love described was in Woodsfield. Appellant also gave methamphetamine to the confidential informant who lived in Woodsfield. The informant testified that Appellant used his car to drive to Columbus to buy drugs. She testified that she acted as a middleman to obtain drugs from Appellant

and sell them to others. Lt. Love's testimony was therefore part of the overall evidence showing that Appellant had a system and plan for obtaining and distributing drugs, and that plan included Woodsfield and Barnesville.

{¶25} There was other evidence connecting Appellant to ownership of the drugs found in the search of the house. He was found in the laundry room near the drugs. His wallet was found in a safe with some of the drugs. His car keys were found next to some of the drugs. He frequently visited 121 Brill Street, several personal items were in the home, and it was inferred that he lived there. The evidence also showed that he was a drug user, himself. Appellant clearly admits the state proved he was a drug user, including by use of the testimony from Officer Kubat that Appellant was found with blood coming from his arm near a freshly used syringe. (Tr., p. 326.) Appellant states in his brief that "[t]he testimony clearly shows that Mr. Haslam was in the house and was actively using drugs." (Appellant's Brf., p. 6.)

{¶26} Appellant was charged with trafficking as well as possession. Part of the crime of trafficking, here, is that the defendant did "[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance . . ." R.C. 2925.03(A)(2). To establish trafficking, the state offered evidence of the tracking of Appellant's vehicle, the locations where the vehicle traveled and stopped, evidence that Appellant picked up his narcotics in Columbus, returned immediately to Barnesville, and that a bulk amount of narcotics was found in the house where Appellant was staying. Lt. Love's testimony corroborates the other evidence of trafficking and shows that it was no accident or coincidence that Appellant was found at 121 Brill Street in the presence of an amount of narcotics usually associated with trafficking.

Case No. 24 BE 0019

**{¶27}** Appellant cited *State v. Hartman*, 2020-Ohio-4440, as an example of a case where none of the exceptions to the prohibition of "other acts" evidence found in Evid.R. 404(B)(2) applied. *Hartman* was a rape case in which the state introduced evidence of another sexual assault the defendant had committed three years earlier. The state intended to use the other acts evidence to show a modus operandi, using similarities between the two crimes. The trial court allowed the testimony, but the conviction was reversed in the Eighth District Court of Appeals, and reversal was upheld by the Ohio Supreme Court.

**{¶28}** *Hartman* explains why, under the specific facts of the case, the state could not use the testimony about the earlier sexual assault to prove modus operandi, common scheme or plan, motive, or intent or absence of mistake. The court was not faced with, and did not discuss, the use of such testimony as rebuttal evidence.

**{¶29}** The *Hartman* Court also explained that the purpose of introducing some types of other acts evidence is to establish the identity of the perpetrator, particularly when the other acts evidence is used to show modus operandi. In *Hartman*, though, Hartman's identity as the assailant was not in question. In the instant case, the identity of Appellant as the owner of the narcotics was squarely in question. Thus, one of the main reasons supporting the decision in *Hartman* does not apply to this appeal.

**{¶30}** Finally, *Hartman* was primarily concerned with the balance between admitting evidence that was relevant to a particular Evid.R. 404(B)(2) exception, and not admitting the evidence due to substantial unfair prejudice. *Hartman* held that: "In every instance, the trial court must determine whether the proffered evidence—though admissible under Evid.R. 404(B)—is nevertheless more prejudicial than probative." *Id.* at

¶ 29. The *Hartman* Court did not find that the evidence was particularly relevant or material to any of the Evid.R. 404(B)(2) exceptions. *Hartman* had the additional problem that the Court was particularly concerned that the jury instruction regarding the other acts testimony was inadequate. Hence, it was fairly easy for the Court to conclude the evidence was more prejudicial than relevant and material.

{¶31} In the instant matter, it was crucial for the prosecutor to connect Appellant's use of his car to purchase and transport narcotics to the fact that Appellant and his car were found at 121 Brill Street. Appellant's counsel attempted to show, through cross-examination, that he never used his car to transport narcotics. The prosecutor was permitted to rebut that impression. The exact elements that were missing in *Hartman* and which led to reversal of the trial court's decision are present in this case, and clearly support the trial court's judgment in this matter. We also note Appellant fully accepted the adequacy of the court's jury instruction regarding other acts testimony, and so stated on the record.

{¶32} As to how prejudicial the testimony from Lt. Love was, the record clearly provides the answer. Appellant admits that the state proved, without Lt. Love's testimony, that he was a drug user. The testimony of Det. Russell and Officer Kubat established that Appellant used his car to visit numerous locations known for selling narcotics. The police were aware that Appellant went to Columbus on May 11, 2022, to buy narcotics. Officer Kubat testified that Chad Anderson was not suspected of drug trafficking and was never under investigation for that crime. Officer Kubat testified that he had stopped Appellant's vehicle previously and found trace amounts of narcotics, but Appellant was not arrested. Officer Kubat testified about various traffic stops in which Appellant was

found with drug paraphernalia, and large sums of cash, at locations known for narcotics use and driving with persons known for narcotics. Although Lt. Love's testimony supports many aspects of the evidence already admitted, the only new evidence contained in his testimony was that Appellant was found at least once to be transporting narcotics in his vehicle, in contrast to the cross-examination testimony of Det. Russell. Hence, though the testimony was certainly somewhat prejudicial, it was relevant and material.

{¶33} We also note that *Hartman* held a jury instruction explaining why other acts evidence is being admitted can mitigate undue prejudice, as long as the instruction states the specific reason that the testimony is being allowed. *Id.* at ¶ 70. This is precisely what the jury instruction did in the instant case, and Appellant's counsel stated he had no objection to the instruction. There was a lengthy discussion before Lt. Love testified regarding the lieutenant's introduction as a rebuttal witness, and the judge gave the jurors an instruction that his testimony was only to rebut the inference that Appellant was never stopped by law enforcement while possessing drugs. (Tr., p. 488.) The judge asked Appellant's counsel if he had any objection, and he stated: "No objections to the language of the charge." (Tr., p. 486.) Appellant's complaints in his appellate brief about the jury instructions will not be entertained, because any objection to the instructions were waived at trial.

{¶34} The testimony of Lt. Love was relevant, was admitted for a legitimate purpose both as rebuttal evidence and under Evid.R. 404(B), and was not unfairly prejudicial. The trial court did not abuse its discretion in allowing Lt. Love to testify. For all the reasons stated, Appellant's assignment of error is overruled.

Case No. 24 BE 0019

## Conclusion

**{¶35}** Appellant argues that impermissible other acts evidence was introduced at trial. Appellant contends that the testimony of Lt. Love about a traffic stop in February of 2022 was only introduced to show that Appellant was the type of person who carried and transported narcotics in his car. This is an incorrect characterization of Lt. Love's testimony. Lt. Love testified as a rebuttal witness, in response to the cross-examination testimony of Det. Mike Russell that left the impression Appellant had never been found to have drugs in his possession during any traffic stop. Appellee established that Lt. Love's testimony was relevant, was admissible as rebuttal evidence, tended to prove essential elements of the crime of trafficking in narcotics, and fit within a number of the exceptions to Crim.R. 404(B) that did not constitute impermissible other acts evidence. There was no abuse of discretion in allowing Lt. Love to testify. Appellant's sole assignment of error is overruled and the judgment of the trial court is affirmed.

Robb, P.J. concurs.

Dickey, J. concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**